865 P.2d 125

STATE of Arizona, Appellant,

v.

Steven Wayne GISSENDANER, Appellee.

No. 1 CA–CR 92–1500.

Court of Appeals of Arizona,
Division 1, Department E.

June 24, 1993.

Review Denied Jan. 19, 1994.

David S. Ellsworth, Yuma County Atty. by Mark Edward Hessinger, Deputy County Atty., Yuma, for appellant.

Richard D. Engler, Yuma, for appellee.

## OPINION

KLEINSCHMIDT, Judge.

The State of Arizona appeals from an order of the Yuma County Superior Court suppressing evidence which was seized from the defendant when he was arrested for assault. We affirm the order suppressing the evidence because the police entered a residence to apprehend the defendant without an arrest warrant when there were no exigent circumstances to excuse the need for a warrant. The arrest was illegal, and the evidence found as a result of it may not be used against the defendant.

In June of 1992, the defendant, Steven Gissendaner, and his girlfriend became involved in an argument. The defendant became upset and began to leave with their baby. His girlfriend ran after him to retrieve the child, and the defendant pushed her to the ground. As she tried to get up, he kneed her in the mouth, splitting her lip. He gave her the baby and left in his truck.

The police were called and when they arrived, the girlfriend gave them a description of the defendant and his truck. She was treated at the scene by paramedics and released without further medical attention. While the police were recording the information the victim gave them, an acquaintance of the defendant stopped by and told the police that the defendant was at a house near where he, the acquaintance, lived. One police officer left the scene of the incident and went to find the defendant. Another officer was called to assist.

The first officer noticed defendant's truck parked in front of a house. The front door of the house was wide open and the officer could see someone seated in a chair inside. By this time, the second officer was present and standing by. The officer, without knocking or identifying himself, stated that he needed to speak with the defendant. The man who was seated in the chair, Dennis Sorrels, who resided at the house, looked into another room of the house and said, "Hey, Steve, they want to talk to you." The officer then immediately entered the house. As the officer approached an interior door, he peeked around it and saw the defendant sitting on a couch fumbling with a piece of clothing. The officer asked him if he was Steven Gissendaner. The defendant abruptly stood up, threw the clothing on the floor in front of him, and said that he was Steven Gissendaner. The officer moved toward him, and asked him to remain seated. The officer who had been waiting outside entered the house to assist.

Underneath the piece of clothing, the officers found a pen barrel that appeared to have been used to ingest drugs. The defendant was placed under arrest. The officers requested some identification, and the defendant told them they could find it in his wallet, which was on the coffee table. In the wallet the officers found a small bag containing methamphetamine. In a duffel bag that was located a few feet from the defendant, they also found a device used for smoking marijuana and a loaded pistol.

The defendant was charged with possession of drug paraphernalia and possession of a dangerous drug. He filed a motion to suppress the evidence of the drugs and drug paraphernalia. At the suppression hearing, the officer who first entered the house testified that "based upon what I had seen at the [girlfriend's] residence, based upon [her] appearance, I felt that there was sufficient reason that Mr. Gissendaner were [sic] going to be charged with aggravated assault and I felt that for officer safety purposes, if he were [sic] there an arrest needed to be made as soon as possible, and that I should use my best officer safety technique." On cross-examination, the officer admitted that no one ever gave him consent to enter the residence. The trial court granted the motion to suppress, and the state appealed.

### THERE WERE NO EXIGENT CIRCUMSTANCES PERMITTING THE ENTRY OF THE HOUSE WITHOUT AN ARREST WARRANT

■ A warrantless entry into a dwelling to effect an arrest is per se unreasonable unless there are exigent circumstances requiring police to act before a warrant can be obtained. *State v. Love*, 123 Ariz. 157, 159, 598 P.2d 976, 978 (1979). The Arizona Supreme Court has recognized the following as exigent circumstances: (1) response to an emergency, (2) hot pursuit, (3) probability of destruction of evidence, (4) the possibility of violence, (5) knowledge that a suspect is fleeing or attempting to flee, and (6) a substantial risk of harm to the persons involved or to the law enforcement process if police must wait for a warrant. *State v. Greene*, 162 Ariz. 431, 784 P.2d 257 (1989); *State v.*

*White*, 160 Ariz. 24, 32–33, 770 P.2d 328, 336–37 (1989).

The state's principal argument is that the officer's concern for his own safety and the safety of others was an exigent circumstance justifying entry into the residence. In support of its argument, the state cites several cases involving police who were responding to domestic violence calls. In *Greene*, our supreme court noted that domestic violence situations are often dangerous because the possibility for physical harm or violence escalates rapidly. 162 Ariz. at 433, 784 P.2d at 259. The court also stated that the call itself creates a sufficient indication that an emergency exists to allow an officer to enter a dwelling if no circumstance indicates that entry is unnecessary. *Id.; see also State v. Tassler*, 159 Ariz. 183, 765 P.2d 1007 (App. 1989) (in responding to call of spousal assault, officers must have freedom to prevent further abuse; act of calling police was likely to further enrage the assailant).

■ The present case is distinguishable from cases like *Tassler* where the police were justified in entering homes without a warrant to prevent a continuing assault. Here, the defendant's assault on his girlfriend was over before the police were even called, and although the record is not clear about the lapse of time and the span of distance between the assault and the arrest, the defendant and the victim were not in close proximity. It is obvious that there was no real danger that the assault was about to resume.

■ There were no other exigent circumstances. The police easily discovered the defendant's whereabouts, and there is no serious suggestion that the defendant was going to flee the vicinity as a result of a relatively minor incident. The police had no indication that the defendant was armed, and, as the trial judge suggested, the officers could have placed the house under surveillance while an arrest warrant was obtained, or they could have simply asked the homeowner, Sorrels, for permission to enter.

■ The state argued in the trial court that the entry was justified because the police were in hot pursuit of the defendant when they entered the house. It has not

reurged this argument on appeal and has therefore abandoned it, *State v. Rodriguez*, 160 Ariz. 381, 384, 773 P.2d 486, 489 (1989), as well it might. *See State v. Cook*, 115 Ariz. 188, 564 P.2d 877 (1977) (no hot pursuit where officers did not witness crime, there was no indication that the suspect was armed, there was no indication of how fresh the flight was, and two officers were present so residence could have been secured while warrant was obtained).

### THE DEFENDANT HAD A REASONABLE EXPECTATION OF PRIVACY IN THE RESIDENCE

The state also argues that the evidence should not have been suppressed because the officers did not enter the defendant's own home. The only authority cited by the state for this proposition is article 2, section 8 of the Arizona Constitution, which says that "No person shall be disturbed in his private affairs, or *his* home invaded, without authority of law." (Emphasis added.)

■ The United States Supreme Court has held that status as an overnight guest is enough for the guest to show a reasonable expectation of privacy in the home invaded. *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). The record is not clear, but Sorrels either owned or rented the home. The defendant had some extra clothes with him at the time of the arrest, and he testified that he intended to stay the night with Sorrels. He also said that he had stayed there previously. At the suppression hearing, the state conceded that the defendant had standing to challenge the legality of the search. As an overnight guest, the defendant had a legitimate expectation of privacy in Sorrels' house which was protected by both the United States Constitution and by article 2, section 8 of the Arizona Constitution.

### CONCLUSION

We affirm the order of the superior court suppressing the evidence seized from the residence where the defendant was arrested. The case is remanded to the superior court for further proceedings consistent with this opinion.

CLABORNE, P.J., and NOYES, J., concur.