984 P.2d 544

**STATE of Arizona, Appellee,**

v.

**William Daniel KING, Appellant.**

**No. 1 CA–CR 97–0424.**

Court of Appeals of Arizona,
Division 1, Department A.

Nov. 24, 1998.

Review Granted Sept. 24, 1999.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel and Galen H. Wilkes, Assistant Attorney General, Criminal Appeals Section, Phoenix, Attorneys for Appellee.

Law Offices of Evan Haglund by Evan Haglund, Phoenix, Attorney for Appellant.

## OPINION

GARBARINO, Judge.

¶ 1 William Daniel King (the defendant) appeals his conviction and sentence imposed for possession of a narcotic drug, a class 4 felony. Finding that the trial court should have granted the defendant's motion to suppress evidence that was the fruit of an illegal arrest, we reverse and remand.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 On February 26, 1996, a police officer stopped to assist the defendant's wife, whose car had broken down on the side of the road as she was driving to visit her mother. During trial, the officer testified that the defendant's wife told him that she and her husband had "had an argument and her husband forcibly tried to pull her out of her house by the right hand. She was able to get it away and got her small finger cut and knuckles of her ring finger."

¶ 3 The defendant's wife also testified that she was not frightened of her husband and that the cut on her hand "wasn't even

worth a band-aid." The officer testified that the defendant's wife appeared to be frightened. Based on his belief that she was frightened, the officer insisted upon going to the defendant's home to speak with the defendant regarding what he speculated was domestic violence.

¶ 4    The officer testified that he was not in hot pursuit of the defendant and that the defendant did not make any threatening gestures after he answered his door. The defendant's children apparently were asleep in the house, and there was no indication that he was either upset or preparing to leave. The defendant remained inside his house while speaking with the officer and did not invite him inside. After talking to the defendant, who smelled of alcohol, the officer decided to arrest him for assault in a domestic violence situation pursuant to police department policy.[1]  The officer testified that he was concerned for his safety because of the defendant's "attitude ... smirk and alcohol." The officer also testified that he based his probable cause to arrest the defendant on the wife's "statements, her visible injuries, her behavior ... [the defendant's] behavior," and the fact that he believed the defendant was not telling the truth.

¶ 5    When the officer notified the defendant that he was under arrest, the defendant stated that he needed to make a phone call and, subsequently, that he needed to go to the bathroom. The officer refused to allow the defendant to take either action, and the defendant turned to walk further into his home. At that point, the officer reached through the doorway, grabbed the defendant, pulled him outside, and handcuffed him. In doing so, the officer reached inside the defendant's home. The officer escorted the defendant to jail, and the police completed an inventory of the property on his person. While conducting the inventory, the police discovered a small amount of cocaine in the defendant's wallet and charged him with possession of a narcotic drug.

¶ 6    A grand jury indicted the defendant on one count of possession of a narcotic drug, a class 4 felony, and one count of assault, a misdemeanor. Prior to trial, the defendant moved to suppress the cocaine on the basis that his "arrest was without probable cause and was unreasonable under the circumstances and further constituted a warrantless entry into defendant's residence, in violation of both the Fourth Amendment to the United States Constitution and Article 2, Section 8 of the Arizona Constitution." The trial court denied the defendant's motion. The case proceeded to trial. The jury acquitted the defendant of assault, but convicted him of possession of a narcotic drug. The defendant timely appealed.

## STANDARD OF REVIEW

■ ¶ 7    We consider the facts in the light most favorable to sustaining the trial court's denial of the defendant's motion to suppress; we will not interfere with the trial court's decision absent clear and manifest error. *See State v. Hyde,* 186 Ariz. 252, 265, 921 P.2d 655, 668 (1996).

## DISCUSSION

¶ 8    The defendant first contends that the officer did not possess probable cause to arrest him. Second, the defendant argues that the officer violated his state and federal constitutional rights when the officer physically intruded into his residence and effected a warrantless arrest. Finally, the defendant argues that the Yuma Police Department's policy of making an arrest in every domestic violence assault case violates the state and federal constitutions by suspending the need for individualized findings of probable cause.

I.   *Conducting an Appropriate Warrantless Arrest Outside the Home*

¶ 9    If we assume, without deciding, that the officer possessed probable cause to believe that the defendant had committed domestic violence, the officer would have been

---

1.   At a later hearing regarding the defendant's motion to suppress the cocaine that the police had discovered in his wallet, the officer cited Arizona Revised Statutes Annotated (A.R.S.) section 13–3601 (Supp.1997), stating, "[p]er YPD

[Yuma Police Department] policy, assault is one of the offenses where the officer has to make an arrest unless a supervisor is consulted with and deems it would be more appropriate not to make an arrest."

acting within the law in making a warrantless arrest of the defendant outside of his home. Arizona Revised Statutes Annotated section 13–3601(B) provides that:

> **B.** A peace officer may, with or without a warrant, arrest a person if the officer has probable cause to believe that domestic violence has been committed and the officer has probable cause to believe that the person to be arrested has committed the offense, whether such offense is a felony or a misdemeanor and whether such offense was committed within or without the presence of the peace officer. In cases of domestic violence involving the infliction of physical injury ... the peace officer shall arrest a person, with or without a warrant, if the officer has probable cause to believe that the offense has been committed and the officer has probable cause to believe that the person to be arrested has committed the offense, whether such offense was committed within or without the presence of the peace officer, unless the officer has reasonable grounds to believe that the circumstances at the time are such that the victim will be protected from further injury.

*See also* A.R.S. § 13–1203(A)(1) (1989) ("A person commits assault by ... [i]ntentionally, knowingly or recklessly causing any physical injury to another person...."); A.R.S. § 13–3883(A)(2) (Supp.1997) ("A peace officer may, without a warrant, arrest a person if he has probable cause to believe ... [a] misdemeanor has been committed in his presence and probable cause to believe the person to be arrested has committed the offense.").

II. *"Physical Intrusion" to Effect a Warrantless Arrest*

¶ 10 In denying the motion to suppress evidence arising out of the defendant's arrest, the trial court stated in part:

> I can't conceive any circumstance where an officer says, you are under arrest, where they are going to allow someone to just walk away out of their sight because the officer doesn't know what the person is going to do. It would be extremely poor judgment on the officer's part, once they say one is under arrest, to let them get out of their sight.

In this case the officer didn't actually go inside. His arms reached inside.

We find this action to be an intrusion into the defendant's home. The United States and Arizona Constitutions protect individuals from unreasonable search and seizure in their homes. *See State v. Ault,* 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986). "As a matter of Arizona law, officers may not make a warrantless entry into a home in the absence of exigent circumstances or other necessity." *Id.*

¶ 11 The acknowledged exigent exceptions to this warrant requirement include response to an emergency, hot pursuit, the likely destruction of evidence, the possibility of violence, attempted flight, and "a substantial risk of harm to the persons involved or to the law enforcement process if police must wait for a warrant." *State v. Gissendaner,* 177 Ariz. 81, 83, 865 P.2d 125, 127 (App.1993). Here, none of the exigent circumstances existed to permit the officer to lawfully enter the defendant's home without an arrest warrant. Given the insignificant scratch on the defendant's wife's hand, her description of a relatively innocuous marital argument, the fact that the wife was not in any danger, and the defendant's calm manner, we find nothing that will support the State's contention that the defendant might have become violent or tried to run away. Nor was there an emergency, hot pursuit, or concern over the potential destruction of evidence.

¶ 12 We see no reason why the police officer could not have requested an arrest warrant if he felt an arrest was necessary. This case is similar to *Ault,* in which the court stated that

> the deputies were not responding to an emergency and fear of escape was virtually nonexistent.... There clearly was no hot pursuit or grave risk of violence articulated by the state which would allow warrantless entry.

While we believe the safety of law enforcement personnel is of utmost importance, we cannot allow the creation of exigent circumstances in order to circumvent the warrant requirement. The mere incantation of the phrase "exigent circum-

stances" will not validate a warrantless search of one's home.

150 Ariz. at 463, 724 P.2d at 549; *see Gissendaner,* 177 Ariz. at 83–84, 865 P.2d at 127–28 (finding that, after the defendant kneed his girlfriend in the mouth and drove to a home where he was an overnight guest, no exigent circumstances existed, and police could have either obtained an arrest warrant or asked the homeowner for permission to enter).

¶ 13    It is important to note that this case is distinguishable from those cases in which the police respond to a domestic violence call and an officer's immediate presence is essential to prevent further violence. *See, e.g., State v. Greene,* 162 Ariz. 431, 432–33, 784 P.2d 257, 258–59 (1989) (finding that the police entered a home within the exigent circumstance exception when responding to a domestic violence call); *State v. Tassler,* 159 Ariz. 183, 185, 765 P.2d 1007, 1009 (App.1988) (holding that, because "the act of calling the police was likely to enrage further the assailant," exigent circumstances existed in responding to a domestic violence call at a home to which the police previously had been called regarding an assault).  In the present case, the police officer accidentally discovered the possibility that an act of domestic violence had occurred.  There was no basis in fact to support the officer's belief that he personally was in danger.  The alleged victim had left the home and was in no further danger.  There was no indication of imminent flight by the defendant.  What we do find is a defendant with a bad attitude who had been drinking and had smirked at the officer, but who also had remained within the confines of his home.

¶ 14    The dissent makes much ado about the officer's reaction to the presence of "exigent circumstances."  It must first be remembered that the defendant was within his home both during his conversation with the officer and when the officer advised him from outside the home that he was under arrest.  The dissent acknowledges this, referring to the defendant "turning away from the door and walking away from the police officer" after the officer advised him that he was under arrest.  The officer testified that he was concerned that the defendant was going to get a weapon or that he was going to run, although there was no showing that there was a gun in the home or that the defendant ever attempted to leave.

¶ 15    The exigent circumstances, if any, were created by the officer when he unjustifiably advised the defendant that he was under arrest.  The officer's testimony regarding the defendant's possible actions after he had been advised that he was under arrest is nothing more than pure speculation.  By relying on the officer's statements, the dissent attempts to create *de facto* exigent circumstances, to transform an otherwise illegal arrest into a legal arrest.

¶ 16    The officer expressed concern that the defendant may have been going for a weapon.  However, there would have been no real concern about a weapon if the officer had not advised the defendant that he was under arrest.  Likewise, the defendant could have run, but had the defendant not been told he was under arrest, there would have been no concern about the defendant running.  When the officer informed the defendant that he was under arrest, he *created* the exigent circumstances upon which the dissent now relies to justify an illegal arrest.  It was not the domestic violence from which the exigent circumstances flowed, but the unjustified arrest by the officer.

¶ 17    Risk is an inherent part of police work.  Risk is an insufficient justification for an officer to violate an individual's constitutional right to be secure in his home against unreasonable seizure.

¶ 18    Finally, we give no credence to the State's argument that the officer did not actually "enter" the defendant's house.  Whether by an arm, a leg, or the entire body, any entrance into a person's home is still an entrance.    The officer testified that he "grabbed his [the defendant's] arm and pulled him outside the house and placed him in handcuffs."  Viewing the facts in the light most favorable to sustaining the trial court's ruling, we hold that the trial court erred by finding that the cocaine was admissible as the fruit of a legal arrest.

## CONCLUSION

¶ 19  We reverse and remand for findings consistent with this decision. Having determined that the cocaine is inadmissible evidence as fruit of an illegal arrest, we need not address the defendant's other arguments.

CONCURRING: RUDOLPH J. GERBER, Judge.

TOCI, Judge, dissenting.

¶ 20  I respectfully dissent. I agree with the majority that an officer may not make a warrantless entry into a home in the absence of exigent circumstances. Nevertheless, here the record clearly supports the trial court's denial of defendant's motion to suppress. Under these circumstances, defendant's conduct in retreating into his home after the officer advised him that he was under arrest was an exigent circumstance justifying a warrantless entry into the residence.

¶ 21  This record establishes that the officer had probable cause to arrest defendant for an act of domestic violence. See A.R.S. § 13–3601(B). Although the opinion concedes this fact for the purpose of argument, Op. ¶ 9, the majority later backpedals by asserting that the officer "unjustifiably advised the defendant he was under arrest." Op. at ¶ 15. The opinion then asserts that the officer created the exigent circumstances by advising defendant he was under arrest. Op. at ¶ 16. This argument has no support. Because the officer had probable cause to arrest defendant, the officer's statement to defendant that he was under arrest was certainly justified. The only issue here is whether the officer had the right to enter defendant's home to effectuate a legal arrest when defendant refused to accede to the arrest.

¶ 22  We are obligated to review the facts in the light most favorable to sustaining the trial court's ruling, and we will not disturb it absent clear and manifest error. *Hyde,* 186 Ariz. at 265, 921 P.2d at 668. The majority, while acknowledging the appropriate standard of review, fails to apply it here.

¶ 23  Viewed in a light most favorable to sustaining the trial court's ruling, the facts are these. The officer noticed defendant's wife and her minor son in an automobile stalled at a traffic light. When he assisted her she asked him to call her mother for a ride home. During the conversation, he learned from her that, during a marital argument, defendant had forcibly tried to pull her out of the family home. Although she was able to get away, defendant inflicted an inch-long cut on her little finger and the knuckles of her ring finger. According to the officer, when she was talking to him she appeared to be "scared." "She kept turning and looking south towards the direction of the street she lived on." She told the officer that defendant drank about "a bottle of wine." The officer put defendant's wife and the minor child in the patrol car and went to defendant's residence to investigate the matter.

¶ 24  Leaving defendant's wife and child in the patrol car, the officer knocked on the door and questioned defendant. The officer then decided to place defendant under arrest for domestic violence. The officer told defendant he was under arrest, and defendant asked if he could go in the house and make a phone call. The officer said no. Defendant then asked if he could use the bathroom, and the officer replied, "You can use the bathroom at the jail." Defendant then started to turn away from the door and walk away from the police officer.

¶ 25  The officer grabbed defendant, pulled him out of the house, and placed handcuffs on him. The officer did so because he was concerned that defendant would get a weapon and because he was afraid defendant would run. For these reasons, the officer thought he needed to arrest defendant and get him out of the house.

¶ 26  The majority says there was no basis in fact for the officer's belief that he was personally in danger. But under the proper standard of review, the majority is not entitled to reweigh the officer's testimony, find it lacking, and make new findings of fact on appeal. The trial court denied defendant's motion to suppress, thus implicitly accepting the police officer's testimony. The majority is bound to view the facts in a light most favorable to sustaining the trial court's rul-

ing. *Hyde,* 186 Ariz. at 265, 921 P.2d at 668. Applying that standard of review requires that the majority accept as fact the police officer's testimony that he was afraid that defendant would flee or get a gun.

¶ 27 Our supreme court has held that where the defendant attempts to flee, a warrantless entry into a home is justified if reasonably necessary to prevent the suspect's escape. *State v. White,* 160 Ariz. 24, 33, 770 P.2d 328, 337 (1989). Here, the majority states that there was no indication that defendant would run away. This statement by the majority again does violence to the standard of review. Viewed in a light most favorable to upholding the trial court's ruling, defendant refused to accede to the arrest and tried to retreat into the home. The officer testified, "I thought maybe he was going to get a weapon or try to run from me, so I grabbed his arm and pulled him outside the house and placed him in handcuffs." The possibility that defendant would run, coupled with his retreat from the officer, was an exigent circumstance sufficient to justify a warrantless entry. *Id.* Furthermore, the officer's testimony that he thought defendant might get a weapon when defendant moved away from the door was an additional reason justifying a warrantless entry. *See Greene,* 162 Ariz. at 433, 784 P.2d at 259.

¶ 28 The record demonstrates that defendant had been drinking, he had by his own admission been involved in a dispute with his wife, and according to his wife's statement, he had assaulted her and ejected her from the family home, inflicting physical harm to her in the process. When advised by the officer that he was under arrest, defendant not only failed to acquiesce, but he refused to obey the officer's instructions and turned away and attempted to walk into the interior of the house. Under these circumstances, the officer was not required to expose himself to danger by obtaining an arrest warrant. "[A] warrantless entry can be made into a dwelling if the circumstances are 'those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search until a warrant could be obtained.' " *Id.* at 432–33, 784 P.2d at 258–59 (quoting *United States v. Robertson,* 606 F.2d 853, 859 (9th Cir.1979)).

¶ 29 The opinion speculates that the wife's scratch was "insignificant," the marital argument was "relatively innocuous," defendant's demeanor was "calm," and "the wife was not in any danger." One cannot take the evidence and all inferences in a light most favorable to upholding the ruling of the trial court and reach these conclusions. This situation—one where the wife has been physically injured while being ejected from the home by the husband—cannot be fairly characterized as a relatively innocuous marital argument involving no danger to the wife. This is especially so where the legislature has indicated its intention to protect those who have sustained *any* physical injury from an act of domestic violence, however slight. *See* A.R.S. §§ 13–3601 and 13–1203(A)(1).

¶ 30 The exigency created by domestic violence situations arises out of the possibility that physical harm or damage may escalate rapidly. *Greene,* 162 Ariz. at 433, 784 P.2d at 259. The wife's presence in the police car may not have been enough to put her beyond the risk of immediate further harm from defendant. The fact that the wife had already been assaulted by defendant not long before and that the police were investigating the matter presented a risk of harm both to her and the officers themselves. The police presence at the door might very well have further incited defendant. *See Tassler,* 159 Ariz. at 185, 765 P.2d at 1009. "In these circumstances, a warrantless entry to effect an arrest or to determine whether an arrest is necessary is a reasonable method to prevent further assaultive behavior." *Id.*

¶ 31 I would affirm.