NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BENNETT FRANCISCO BENITEZ, *Appellant.*

No. 1 CA-CR 19-0458
FILED 8-5-2021

Appeal from the Superior Court in Maricopa County
No. CR2016-143212-001
The Honorable Joseph P. Mikitish, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

---

**G A S S**, Judge:

¶1　　　　Bennett Francisco Benitez appeals his convictions and sentences. We vacate Benitez's convictions and sentences for the three counts of threatening or intimidating as class six felonies. We affirm Benitez's convictions and sentences on all remaining counts.

## FACTUAL AND PROCEDURAL HISTORY

¶2　　　　This court reviews the facts in the light most favorable to sustaining the jury's verdict, resolving all reasonable inferences against Benitez. *See State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015).

¶3　　　　N.H. was driving through her mobile-home community with her husband and their children. As they approached their home, they saw Benitez standing in the middle of the narrow roadway. Benitez was wearing a gray t-shirt and had a folded red bandana over his shoulder. A gang expert testified Benitez is a documented member of the "East Side Los Guada Bloods" (ESLGB), a prolific criminal street gang. Red is the gang's primary color.

¶4　　　　When Benitez refused to move, N.H. drove around him. As she did so, Benitez pounded his fists on her car and yelled insults at her. After N.H. parked at her home, Benitez approached. As N.H. exited her car, Benitez repeatedly yelled he would kill her and her family while using his hands to simulate a gun and flash gang signs. In total, Benitez shouted threats and obscenities at N.H. for ten to fifteen minutes. Fearing for her family's safety, N.H. called 9-1-1. At this point, Benitez returned to his family's trailer on the same street.

¶5　　　　M.R. lived in the same community and saw the incident with N.H. while M.R. was waiting for her children to return from school. Shortly after the incident with N.H. ended, M.R. left her home to pick up her children at a bus stop at the mobile-home community's office. In doing so, M.R. passed Benitez's family trailer. Benitez then yelled obscenities and

threatened to kill M.R. While threatening M.R., Benitez again used his hands to simulate a gun and flash gang signs.

¶6            Police officers arrived a few minutes later. After speaking with M.R., officers went to Benitez's family trailer, knocked on the door, and ordered Benitez to exit the trailer. Benitez refused to leave for more than an hour. When he finally came out, Benitez said he was a "Blood from the reservation" and recognized one of the gang detectives. In a later interview with a different detective, Benitez admitted he was involved in an altercation with N.H., saying he was angry with her because she almost hit him with her car. He also admitted he was a member of ESLGB. Police officers obtained a warrant and searched Benitez's family trailer. They found two red bandanas, red shoelaces, red clothing including a red shirt, and a hat depicting the words "Highland Avenue."

¶7            The State charged Benitez with three counts of threatening or intimidating, class three felonies (counts 1–3); three counts of threatening or intimidating, class six felonies (counts 4–6); and assisting a criminal street gang, a class three felony (count 7). At trial, the State called several law-enforcement witnesses to testify as gang experts. The witnesses said ESLGB members commonly display their allegiance by wearing red clothing, pressed red bandanas, red belts, and items referencing "Highland Avenue."

¶8            One gang expert, a detective familiar with ESLGB, explained a criminal-street-gang's objective is to commit crimes. He said gangs use fear and intimidation "to carry out the crimes that they want to commit . . . [without] repercussions of people reporting their crimes." Gang members will often intimidate witnesses and victims "to keep the police from being contacted[,] . . . from telling the police what happened[,] . . . [or] from showing up to court." The use of gang signs, colors, and self-proclaimed gang membership when threatening witnesses and victims promotes the gang's interest by spreading fear in a community, permitting the gang to commit crimes with little concern for police involvement. Gang members also can achieve a higher status by invoking their gang allegiance while threatening others.

¶9            The jury convicted Benitez as charged. The jury found several aggravating factors, including a statutory sentence enhancement for "committing any felony offense with the intent to promote, further or assist any criminal conduct by a criminal street gang." *See* A.R.S. § 13-714.

¶10           The superior court sentenced Benitez as a category three repetitive offender to enhanced, concurrent terms of imprisonment on all

counts, the longest of which was fifteen years. Benitez timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 13-4031, and 13-4033.A.1.

## ANALYSIS

I.     **The superior court did not abuse its discretion by proceeding with Benitez's trial *in absentia*.**

**¶11**         Benitez first asserts the superior court erred by proceeding *in absentia* when, by his account, he was involuntarily absent for a portion of the fifth trial day. Though criminal defendants have a constitutional right to be present at trial, they "may voluntarily relinquish the right to attend trial." *State v. Reed*, 196 Ariz. 37, 38, ¶ 3 (App. 1999) (quotation omitted); *see also* U.S. Const. amend. VI; Ariz. Const. art. 2, § 24.

**¶12**         Arizona Rule of Criminal Procedure 9.1 authorizes the superior court to infer a defendant's absence is voluntary when "the defendant had personal notice of (1) the time of the proceeding, (2) the right to be present at it, and (3) a warning that the proceeding would go forward in his or her absence." *State v. Sainz*, 186 Ariz. 470, 472 (App. 1996). Defendants bear the burden of rebutting a superior court's Rule 9.1 inference of voluntary absence. *See Reed*, 196 Ariz. at 39, ¶ 3. This court reviews a superior court's "determination of a defendant's voluntary or involuntary absence for an abuse of discretion." *Id.* at 38, ¶ 2.

**¶13**         When Benitez failed to appear on the fifth day of trial, his counsel informed the superior court Benitez was receiving medical care at an urgent care facility. Defense counsel moved to continue trial because Benitez could not be present. Before ruling on the motion, the court asked for documentation to verify Benitez's medical visit, noting Benitez's "prior scheduling issues." The court previously had issued bench warrants for Benitez's arrest for failure to appear at several pretrial hearings. And during trial, Benitez arrived late on multiple occasions. After speaking with Benitez on the phone, defense counsel told the superior court Benitez was still undergoing care and could not provide documentation. Defense counsel said he asked Benitez to send a photograph showing his location at the medical facility, but Benitez had not done so.

**¶14**         The superior court ruled the trial would proceed, "given a lack of verification provided," and would allow Benitez to appear telephonically. Benitez did not answer his phone when defense counsel called him. The court further stated it would reconsider its ruling if Benitez eventually provided proof of his medical visit. Trial then proceeded with

cross-examination of a detective. Benitez had been present during the State's direct examination of that witness. During the State's redirect examination, Benitez sent photographs showing he was at a medical facility. When defense counsel presented the photographs, the superior court recessed trial for the day. The record reflects approximately twenty pages of transcribed testimony occurred in Benitez's absence.

¶15        Benitez appeared for trial the next morning, and his counsel moved for a mistrial based on the superior court's refusal to grant a continuance the day before. The superior court denied the motion but allowed Benitez to reopen cross-examination or alternatively call the detective during the defense's case. The superior court also gave Benitez a recording of the testimony taken in his absence, directing him to review it and decide how he wanted to proceed.

¶16        Benitez failed to appear for trial the following morning. Defense counsel informed the superior court Benitez would arrive within a few minutes, but when Benitez had not appeared two hours later, the court adjourned. Benitez again failed to appear the next day. Because Benitez's counsel had no information about Benitez's location and could not provide a reason for his absence, the superior court ruled Benitez had voluntarily absented himself and proceeded with the trial *in absentia*. Benitez's limited challenge is to the superior court's decision to proceed *in absentia* on the fifth day of trial, not its ruling after he failed to appear on the seventh day.

¶17        In determining whether a defendant's absence is voluntary, the superior court must consider any information the defendant presents. *Reed*, 196 Ariz. at 39, ¶ 4. But it is required to conduct a hearing only when the defendant establishes a colorable claim of involuntary absence. *See State v. Friscoe*, 135 Ariz. 25, 34 (App. 1982). Here, the superior court properly considered the limited information Benitez initially provided to explain his absence on the fifth day of trial, including his failure to verify his reported medical treatment with a photograph or documentation. Given Benitez's history of missing court hearings and his failure to provide reasonable verification, we cannot conclude the superior court abused its discretion by finding Benitez's absence was voluntary without first holding a hearing. *See id.*; *see also State v. Armstrong*, 208 Ariz. 345, 354, ¶ 40 (2004) (abuse of discretion occurs when "no reasonable judge would have reached the same result under the circumstances").

¶18        Further, when Benitez eventually provided proof of his medical visit, the superior court ended trial for the day. It then cured any potential prejudice by giving Benitez a recording of the testimony and

allowing him to re-examine the detective. Though Benitez claims the remedy was unsatisfactory, it mirrors the remedy this court endorsed for such circumstances in *Sainz* and we find no error in applying it here. *See* 186 Ariz. at 473–75 (no prejudice based, in part, on the defendant's opportunity to re-examine a witness after an inferred voluntary absence was determined to be involuntary).

**¶19** Additionally, Benitez does not explain why his challenge is not moot given he absconded for the remainder of trial and therefore declined the opportunity to review the testimony and re-examine the detective. He also identifies no specific line of questioning the superior court's ruling prevented him from asking. Accordingly, Benitez suffered no prejudice from any purported error. *See id.*

## II. Benitez has shown no prejudice from the admission of evidence concerning his refusal to immediately exit his family's trailer.

**¶20** Benitez next argues the superior court fundamentally erred by admitting evidence he remained in his family trailer for an hour after police ordered him to exit. He argues the admission violated due process because it constituted an impermissible comment on his invocation of his rights under the Fourth Amendment and the Arizona Constitution. Because Benitez did not object on these grounds at trial, our review is limited to fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005).

**¶21** To establish fundamental error, Benitez must first prove error exists. *See id.* at 568, ¶ 23. He must then show such error: (1) went to the foundation of the case; (2) took away a right essential to his defense; *or* (3) was so egregious he could not possibly have received a fair trial. *See State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). Prongs one and two further require a showing of prejudice. *See id.* If, however, Benitez establishes the third prong, "no separate showing of prejudice is necessary, and a new trial must be granted." *See State v. Allen*, 248 Ariz. 352, 360, ¶ 18 (2020).

**¶22** "A warrantless entry into a dwelling to effect an arrest is per se unreasonable unless there are exigent circumstances requiring police to act before a warrant can be obtained." *State v. Gissendaner*, 177 Ariz. 81, 83 (App. 1993). A prosecutor violates due process by using a defendant's invocation of Fourth Amendment rights as evidence of guilt. *State v. Stevens*, 228 Ariz. 411, 417, ¶ 16 (App. 2012); *State v. Palenkas*, 188 Ariz. 201, 210–12 (App. 1996).

**¶23** Here, the prosecutor elicited testimony from a detective that officers needed to use force to compel Benitez and his family to leave their

6

trailer, and defense counsel objected. At a bench conference, the prosecutor said the testimony would show Benitez "refused to give [himself] up," indicating "guilt" and "responsibility." In response, Benitez's counsel argued using such evidence to demonstrate a "guilty conscience" was irrelevant and unfairly prejudicial. The superior court ultimately precluded evidence of the officers' use of force but allowed the State to introduce evidence Benitez refused to leave the trailer, comparing it to evidence of flight. The superior court, however, did not give the jurors a flight-or-concealment instruction.

¶24            Several officers subsequently testified Benitez refused to leave the trailer for over an hour. Officers said they had to barricade the trailer and use a loudspeaker to order Benitez and his family to leave. The jurors also heard about the use of covert surveillance to track the movements of those inside the trailer during the delay.

¶25            Relying primarily on *Stevens*, Benitez argues the prosecutor improperly introduced evidence that he invoked his Fourth Amendment rights to prove consciousness of guilt. *See* 228 Ariz. at 417, ¶ 15. The State contends Benitez's failure to move for suppression of the evidence before trial, or object to its admission, on due-process grounds renders the record insufficient for fundamental-error review.

¶26            Contrary to the State's argument, the prosecutor offered the challenged evidence explicitly to show consciousness of guilt, and the superior court admitted it solely for that purpose. The State's argument further ignores a well-established principle—warrantless entry into a home is *per se* unreasonable. *See Gissendaner*, 177 Ariz. at 83. If the State proffered the challenged evidence to show Benitez was guilty, it would have been required to establish Benitez had no right to refuse the officers' demands that he exit the house. But the State did not offer any evidence showing it had an arrest warrant and did not argue any applicable exception to the warrant requirement.

¶27            The superior court, therefore, erred when it allowed the State to present evidence of Benitez's reliance on his Fourth Amendment protections for the sole purpose of showing his consciousness of guilt. This error violates Benitez's due process rights and constitutes fundamental error under "prong one." *See Escalante,* 135 Ariz. at 141, ¶ 18 (citing *Stevens*, 228 Ariz. at 417, ¶ 16). Accordingly, we must next determine whether Benitez has also established prejudice. *See id.* at 142, ¶ 21.

**¶28** To prove prejudice, Benitez must "show[] that without the error, a reasonable jury could have plausibly and intelligently returned a different verdict." *See id.* at 144, ¶ 31. To apply this standard, we "examine the entire record, including the parties' theories and arguments as well as the trial evidence." *Id.*

**¶29** In contrast to *Stevens*, the prosecutor here did not argue Benitez's refusal was evidence of guilt. Indeed, despite his express purpose for introducing the evidence, the prosecutor never mentioned the matter in his closing argument. *Compare State v. Sharp*, 193 Ariz. 414, 422, ¶ 23 (1999) (improperly admitted evidence caused "no actual prejudice . . . because the prosecution did not emphasize this evidence at trial"), *with Stevens*, 228 Ariz. at 417, ¶ 17 (defendant was prejudiced by admitting evidence of refusal to consent "coupled with argument that [defendant] was motivated by her desire to prevent the police from discovering 'her methamphetamine'"). And the superior court did not tell the jurors they could consider Benitez's refusal to exit in reaching their verdict.

**¶30** Nonetheless, Benitez contends he suffered prejudice because admitting the challenged evidence reinforced the State's theory the gang-allegiance items police found in his family trailer belonged to him. But Benitez admitted he was a member of ESLGB and a "Blood from the reservation." And in closing argument, defense counsel told the jurors the case was "not about whether Mr. Benitez is a gang member. He is." Benitez's defense was innocence—though he was angry with N.H. because she nearly hit him with her car, he did not threaten N.H. or M.R. Linking the items in the trailer to Benitez did nothing to undermine this defense.

**¶31** Because the record does not support Benitez's assertion of prejudice, he has not satisfied his burden to show fundamental error. *See Escalante*, 245 Ariz. at 142, ¶ 21.

## III. The superior court did not abuse its discretion by admitting evidence of Benitez's continuing gang membership.

**¶32** Before trial, Benitez moved to preclude the State from introducing evidence of numerous "gang membership identification criteria" (GMIC) cards police created for him between 2000 and 2018. Benitez argued the charges required the State to prove his allegiance to ESLGB only on the day of the offense, not before or after it. The State asserted the GMIC evidence was probative of Benitez's ongoing association with the gang, revealing his motivation to promote its interests.

¶33        The superior court agreed with the State and admitted four GMIC cards issued between 2009 and 2018 but precluded several others. Benitez argues the superior court erred by admitting the four GMIC cards. This court generally reviews the superior court's evidentiary rulings for abuse of discretion. *See State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006).

¶34        To prove the threatening-or-intimidating offenses as class three felonies, the State had to show Benitez threatened or intimidated the victims "to promote, further or assist" ESLGB. *See* A.R.S. § 13-1202.A.3, .C. Similarly, the assisting-a-criminal-street-gang charge required proof Benitez threatened or intimidated the victims "for the benefit of, at the direction of or in association with" ESLGB. *See* A.R.S. § 13-2321.B. The threatening-or-intimidating offenses as class six felonies required proof Benitez was a member of ESLGB. *See* A.R.S. § 13-1202.A.1, .B.2.

¶35        The record supports the superior court's decision. The GMIC evidence was relevant to prove Benitez threatened the victims as a member of ESLGB and for its benefit. Evidence of his long-standing ESLGB membership explained Benitez's gang-related motivation—which the State was required to prove—for committing the charged offenses.

¶36        Further, the record reflects the superior court carefully considered the evidence, striking a balance between its probative value and prejudice by admitting only four GMIC cards rather than the seven cards the State sought to admit. In doing so, the superior court expressed concern that if all the GMIC evidence was introduced "the jury may convict him because he's been in a gang for a long time." *See* Ariz. R. Evid. 403; *State v. Harrison*, 195 Ariz. 28, 33, ¶ 21 (App. 1998) ("The trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice."). Consequently, we find no abuse of discretion. *See State v. Penney*, 229 Ariz. 32, 34, ¶ 8 (App. 2012).

## IV.    Reasonable evidence supports sentence-enhancement under A.R.S. § 13-714.

¶37        Benitez asserts the State presented insufficient evidence to support the sentence-enhancement factor under § 13-714, which required proof he committed the crimes with the intent to promote, further, or assist ESLGB's criminal conduct. This court reviews *de novo* a claim of insufficient evidence. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).

¶38        Sufficient evidence may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate" to "support a conclusion of defendant's guilt beyond a reasonable doubt." *State v.*

*Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013) (quotation omitted). In evaluating the sufficiency of the evidence, this court does "not reweigh the evidence to decide if [it] would reach the same conclusions as the trier of fact." *Id*. at ¶ 9 (quotation omitted).

**¶39** Benitez argues there was no evidence of gang-affiliated conduct to promote because the State did not present any evidence of criminal conduct by ESLGB at "the entity level." But the State's gang experts testified gang members invoke their gang affiliation to threaten others, to place victims and witnesses in fear, to avoid law enforcement and prosecution, and to establish territory. Here, Benitez perceived N.H. had disrespected or came close to harming him and immediately threatened to kill her and her family while proclaiming his gang membership.

**¶40** Shortly after seeing N.H. had called the police, Benitez then threatened to kill M.R. while again invoking his gang affiliation. Because M.R.'s sole involvement was merely witnessing the events involving N.H., a reasonable juror could infer Benitez's motive in threatening her was to deter her from reporting what she saw to the police. Benitez's attire, conduct, statements, and undisputed membership in ESLGB are substantial evidence from which the jury could conclude he threatened N.H. and M.R. to promote ESLGB's interests. Sufficient evidence, therefore, supports sentence enhancement under § 13-714. *See Borquez*, 232 Ariz. at 487, ¶ 9.

## V. The superior court did not coerce the jury during the aggravation-phase deliberations.

**¶41** The State alleged the following aggravators: the infliction or threatened infliction of serious physical injury; the presence of an accomplice; the offense caused physical, emotional, or financial harm to the victim; and the sentence-enhancement factor under § 13-714. Benitez argues the superior court committed fundamental, prejudicial error by coercing the jurors' verdict in the aggravation phase. *See Escalante*, 245 Ariz. at 142, ¶ 21. Specifically, he contends the superior court erred by allowing jurors to begin deliberating near the end of the day, after informing them if they did not reach a verdict by 5:00 p.m., they would need to continue their deliberations the following week.

**¶42** In determining whether the superior court coerced a jury's verdict, this court considers "the actions of the judge and the comments made to the jury based on the totality of the circumstances" and whether "the independent judgment of the jury was displaced." *State v. Huerstel*, 206 Ariz. 93, 97, ¶ 5 (2003); *see also State v. Roberts*, 131 Ariz. 513, 515 (1982)

("What conduct amounts to coercion is particularly dependent upon the facts of each case.").

**¶43**       Though Benitez must affirmatively show prejudice to carry his burden of establishing reversible fundamental error, he merely speculates the jurors rushed their verdicts. *See State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013); *see also State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006) ("We presume that the jurors followed the court's instructions."). Benitez cites no evidence the superior court even suggested the jurors should reach a verdict by a certain time, much less that it directed them to do so. *See State v. Cruz*, 218 Ariz. 149, 167, ¶ 115 (2008) (no coercion when the superior court asked a jury to continue deliberating because it "neither ask[ed] the jury to reach a verdict nor suggest[ed] that any juror should change his or her views"); *Roberts*, 131 Ariz. at 515. Rather, the record shows the superior court explained scheduling matters to the jurors. Based on the totality of the circumstances, we find nothing coercive in the superior court's actions and comments. *See Huerstel*, 206 Ariz. at 97, ¶ 5.

**¶44**       Benitez nonetheless complains the jurors reached their verdicts in "less than nineteen minutes," arguing the brevity of their deliberations reveals they were coerced by the superior court's "scheduling pressure." Because both sides presented no new evidence in the aggravation phase and instead relied entirely on argument based on evidence from the guilt phase, we discern nothing unreasonable in the jury's expeditious deliberations.

## VI.    Benitez's convictions for threatening-or-intimidating under A.R.S. § 13-1202.B.2 violate double jeopardy.

**¶45**       Benitez was convicted on counts 4, 5, and 6, in part, under paragraph 13-1202.B.2, which enhanced each offense from a class one misdemeanor to a class six felony. Several months after the parties submitted their briefs in this matter, our supreme court decided *State v. Arevalo*, holding paragraph 13-1202.B.2 facially unconstitutional because it increased an accused's punishment "based solely upon gang status in violation of substantive due process." *See* 249 Ariz. 370, 372, ¶ 1 (2020).

**¶46**       Consequently, the parties filed supplemental briefs to address *Arevalo*. Benitez argues his convictions and sentences for counts 4, 5, and 6 should be vacated under *Arevalo*. The State agrees the convictions and sentences on those counts should be vacated but offers a different reason—they are lesser-included offenses of counts 1, 2, and 3, in violation of the protection against double jeopardy.

**¶47**       As an initial matter, Benitez may seek relief under *Arevalo* because his case is pending review on direct appeal. *See State v. Styers*, 227 Ariz. 186, 187–88, ¶ 5 (2011). Under *Arevalo*, the sentence enhancements applied to his convictions on counts 4, 5, and 6 are unconstitutional.

**¶48**       Without the sentence enhancements, the crimes charged in counts 4, 5, and 6 were each a class one misdemeanor. *See Arevalo*, 249 Ariz. at 375, ¶ 16. At trial, the superior court properly instructed the jurors "the crimes of threatening or intimidating to promote, further, or assist a criminal street gang and threatening or intimidating by a gang member includes the lesser offense of threatening or intimidating." Accordingly, the threatening-or-intimidating convictions in counts 4, 5, and 6 are lesser-included offenses of the greater convictions in counts 1, 2, and 3. *See State v. Corona*, 188 Ariz. 85, 88–89 (1997).

**¶49**       "[C]onviction of both the greater and the lesser offenses violates" double jeopardy. *See State v. Ortega*, 220 Ariz. 320, 328, ¶ 25 (App. 2008). When a defendant has been convicted and sentenced in violation of double jeopardy, the remedy is to vacate the lesser conviction and sentence. *See State v. Welch*, 198 Ariz. 554, 557, ¶ 13 (App. 2000). We, therefore, vacate Benitez's convictions and sentences for counts 4, 5, and 6. *See State v. Chabolla–Hinojosa*, 192 Ariz. 360, 365, ¶ 21 (App. 1998).

## CONCLUSION

**¶50**       We vacate Benitez's convictions and sentences for counts 4, 5, and 6. We affirm his remaining convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:     AA