267 P.3d 1203

**STATE of Arizona, Appellee,**

v.

**Medina Ann STEVENS, Appellant.**

**No. 1 CA–CR 10–0911.**

Court of Appeals of Arizona, Division 1, Department A.

Jan. 3, 2012.

---

Thomas C. Home, Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section, and Michael O'Toole, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Jill L. Evans, Mohave County Appellate Defender By Diane S. McCoy, Deputy Appellate Defender, Kingman, Attorneys for Appellant.

## OPINION

TIMMER, Presiding Judge.

¶ 1 We are asked in this appeal to decide the viability of our holding in *State v. Palenkas*, 188 Ariz. 201, 933 P.2d 1269 (App.1996), that a prosecutor erred by introducing evidence that a defendant had refused a police request to voluntarily submit to a search. Although we discount some of the reasoning underlying that decision, we adhere to its

holding. For the reasons that follow, and for the reasons set forth in our companion memorandum decision addressing unrelated issues, we reverse Medina Ann Stevens' conviction and resulting disposition imposed for possession of dangerous drugs and remand for a new trial on that charge. We affirm her conviction and resulting disposition for possession of drug paraphernalia.

## BACKGROUND[1]

¶ 2 On March 2, 2010, Stevens was living in a Bullhead City house with her son ("Son") and Son's girlfriend. On that morning, Stevens, holding a methamphetamine pipe, confronted Son about "taking her things" from her room. The matter escalated into a physical struggle in which Stevens tried to strangle Son. He eventually wrested the pipe from her and both called 911 for help. Son informed the 911 operator the fight was over a "dope pipe" or "meth pipe."

¶ 3 When Bullhead City Police officers arrived, Stevens exited the front door of the house as if, according to an officer, "she didn't want [them] to go inside." When she noticed officers were about to enter the home, she became "really paranoid" and yelled, "search warrant." While one officer detained Stevens outside, a second officer entered the house to check on the welfare of Son, who then directed that officer to drug paraphernalia in the house. The police subsequently obtained a search warrant, searched the house, and discovered three digital scales, a metal vial with residue, and baggies containing an unusable amount of methamphetamine residue in Stevens' bedroom. The police also found a plastic bag with a usable amount of methamphetamine in Son's bedroom.

¶ 4 The State charged Stevens with possession of drug paraphernalia and possession of dangerous drugs. During the subsequent jury trial, without objection, the State elicited evidence about and commented on Stevens' protest that officers entered her home without a search warrant. Specifically, a police officer testified Stevens had repeatedly

---

1. We construe the evidence in the light most favorable to upholding the jury's verdict. *State v.*

*Greene*, 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998).

yelled "search warrant" as an officer entered her house to check on Son. The prosecutor asked the officer, "When people say don't go into my house, what does that mean to you?" The officer responded, "Well, it means that there's something in there they don't want me to see." During closing argument, the prosecutor argued:

Well, ladies and gentlemen, you know, when you have considered all the evidence, you will be able to see that when Medina Stevens stood outside and said don't come in, you've got to have a search warrant, she had good reason. She knew what they would find in her house; she knew they would find her paraphernalia and her methamphetamine.

¶ 5 A jury convicted Stevens as charged. The trial court suspended imposition of sentence and placed her on concurrent terms of three years' probation for both counts. This timely appeal followed.

## DISCUSSION

■■■ ¶ 6 Stevens argues the trial court violated her due process rights to a fair trial because the State utilized the invocation of her Fourth Amendment right against warrantless searches as substantive evidence of her guilt.[2] Because Stevens failed to raise this objection to the trial court, however, she has waived the issue absent fundamental error. *State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991). To gain relief under a fundamental error standard of review, a defendant must prove error occurred, the error was fundamental, and the defendant was prejudiced by the error. *State v. Henderson*, 210 Ariz. 561, 568, ¶¶ 23–24, 26, 115 P.3d 601, 608 (2005). Error is considered fundamental if it reaches the foundation of the defendant's case or removes an essential right to the defense. *State v. McGann*, 132 Ariz. 296, 298, 645 P.2d 811, 813 (1982).

¶ 7 We initially decide whether Stevens' due process rights were violated when the State elicited testimony about and commented on her refusal to allow a warrantless search of her home. Stevens relies on this court's decision in *State v. Palenkas*, 188 Ariz. 201, 933 P.2d 1269 (App.1996), to support her position. The victim in that case was killed in a hit-and-run accident involving a cream-colored Rolls Royce or Bentley that was likely damaged by the impact. *Id.* at 204, 933 P.2d at 1272. Police detectives obtained a list of all registered owners of such cars and contacted them to ask permission to view their cars. *Id.* When the detectives contacted the defendant, he refused to allow the inspection, explaining he was awaiting a telephone call from his lawyer about how to proceed. *Id.* Ultimately, the defendant was identified as the driver, and the State indicted him on counts of manslaughter and leaving the scene of a fatal accident. *Id.* at 205, 933 P.2d at 1273. Prior to trial, the court granted a motion in limine precluding the State from introducing evidence that the defendant had refused the voluntary inspection request or told police he had contacted a lawyer. *Id.*

¶ 8 At trial, despite the in limine order, the prosecutor elicited testimony from a detective that the defendant had refused to allow the inspection. *Id.* at 205–06, 933 P.2d at 1273–74. In response to his counsel's questioning, the defendant later explained he had refused the request because he was waiting for a return call from his lawyer. *Id.* at 206, 933 P.2d at 1274. On cross-examination, the defendant repeated his refusal to allow a voluntary inspection and further recounted he had contacted his lawyer because he thought he may have been a witness to the accident. *Id.* at 207, 933 P.2d at 1275. During closing argument, the prosecutor argued that the defendant had refused a voluntary inspection and called his lawyer because "[h]e was concerned about not being arrested by the police," and he had something to hide. *Id.* at 208, 933 P.2d at 1276.

¶ 9 On appeal, this court held that the defendant's due process rights to a fair trial guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution were violated because the prosecutor's

---

2. Stevens does not challenge the legality of either the initial entry into her house or the subsequent search pursuant to a warrant.

purpose in eliciting the disputed evidence was to " 'induce the jury to infer guilt' " from defendant's actions. *Id.* at 212, 933 P.2d at 1280 (citation omitted). In doing so, the court relied in part on the Supreme Court's decision in *Doyle v. Ohio*, 426 U.S. 610, 617, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which held that due process is violated when a prosecutor introduces as impeachment evidence a defendant's assertion of the Fifth Amendment right to remain silent. *Palenkas*, 188 Ariz. at 210, 933 P.2d at 1278. Because the court decided the error was not harmless, it reversed and remanded for a new trial. *Id.* at 213–14, 933 P.2d at 1281–82.

¶ 10 The State argues that Stevens' refusal to allow a warrantless entry into her home was relevant to show her consciousness of guilt. It urges us to reject *Palenkas* as wrongly decided because the court improperly relied on *Doyle*. The State points out that the holding in *Doyle* is limited to excluding impeachment with evidence of a defendant's silence *after* arrest and the provision of *Miranda*[3] warnings.[4] *See also Brecht v. Abrahamson*, 507 U.S. 619, 628, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (acknowledging that *Doyle* only applies to post–*Miranda* warning silence because before the warnings are given the State has not implicitly assured that silence will not be used against the defendant); *Jenkins v. Anderson*, 447 U.S. 231, 240, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (to same effect). Because the State does not make any implicit promises before a defendant exercises Fourth Amendment rights, the State contends *Doyle* is inapplicable, and the *Palenkas* court erred by relying on it. The State urges us to hold that admissibility of a defendant's invocation of Fourth Amendment rights should be governed solely by the rules of evidence rather than due process considerations.

¶ 11 We agree with the State that the *Palenkas* court inaccurately recited the reasoning underlying the holding in *Doyle*. The *Palenkas* court cited *Doyle* for the proposition that "due process is violated when a defendant's assertion of his right to remain silent is introduced at trial as evidence of his guilt, because the exercise of a constitutional right is 'insolubly ambiguous.' "[5] *Palenkas*, 188 Ariz. at 210, 933 P.2d at 1278. Although *Doyle* noted the ambiguity described in *Palenkas*, the holding in *Doyle* "rests on 'the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.' " *Wainwright v. Greenfield*, 474 U.S. 284, 291, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (citation omitted). Thus, even though a defendant's silence prior to recitation of the *Miranda* warnings is "insolubly ambiguous" because the defendant may choose to remain silent to exercise Fifth Amendment rights or to hide his guilt, a prosecutor is not constitutionally prohibited from using this silence as impeachment evidence at trial because no government action induced the defendant to remain silent. *State v. Ramirez*, 178 Ariz. 116, 125, 871 P.2d 237, 246 (1994). To the extent *Palenkas* suggests otherwise, it is in error.

¶ 12 We disagree with the State, however, that the *Palenkas* court's inaccurate description of *Doyle* affects the efficacy of the court's ultimate holding. The *Palenkas* court did not rest its holding solely on *Doyle;* it relied substantially on decisions issued by

---

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Whether and under what circumstances a prosecutor may use pre-warning silence as direct evidence has not been resolved by the United States Supreme Court. *Jenkins v. Anderson*, 447 U.S. 231, 236 n. 2, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). Contrary to the State's view in this appeal, the Arizona Supreme Court did not address this issue in *State v. Ramirez*, 178 Ariz. 116, 125, 871 P.2d 237, 246 (1994), by stating, "[a] prosecutor may ... comment on a defendant's pre-*Miranda* warnings silence, either before or after arrest, because no governmental action induced

petitioner to remain silent, and thus, the fundamental unfairness present in *Doyle* is not present." The context of the statement and the court's reliance on *Wainright v. Greenfield*, 474 U.S. 284, 291 n. 6, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), which in turn relied on *Jenkins*, reveals the quoted statement refers to impeachment evidence.

5. The Supreme Court in *Doyle* reasoned that a defendant's post–*Miranda* warnings silence is "insolubly ambiguous" because it may indicate guilt or it may simply reflect the exercise of the constitutional right explained in the warnings. 426 U.S. at 617, 96 S.Ct. 2240.

courts from other jurisdictions, which held that a prosecutor cannot use a defendant's invocation of Fourth Amendment rights as evidence of guilt. 188 Ariz. at 210–12, 933 P.2d at 1278–80.

¶ 13. *United States v. Prescott*, 581 F.2d 1343, 1350 (9th Cir.1978), is illustrative of these cases. In *Prescott*, the Ninth Circuit considered whether a defendant's refusal to let police into her apartment without a search warrant could be used as evidence of guilt. The court noted a presumption exists that police have no right to enter a home without a warrant "because it is only in certain carefully defined circumstances that lack of a warrant is excused." *Id.* (citing *Camara v. Municipal Court*, 387 U.S. 523, 528–29, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)). An occupant can act on the presumption and refuse to consent to entry without having to determine if an exception to the warrant requirement exists. *Id.* at 1350–51. And passive invocation of this constitutional right cannot be considered a crime. *Id.* at 1351 (citing *Camara*, 387 U.S. at 532–33, 87 S.Ct. 1727). With these principles in mind, the *Prescott* court reasoned that permitting the State to use the invocation of a Fourth Amendment right as evidence of guilt would place "an unfair and impermissible burden" upon the exercise of that right. *Id.* Occupants would be forced to either waive this constitutional right and allow police free rein to conduct warrantless searches or invoke the Fourth Amendment and risk the State arguing later that the invocation evidenced the defendant's guilt. *Id.* Consequently, the *Prescott* court held that prosecutors cannot use a defendant's invocation of the Fourth Amendment right as evidence of guilt, concluding, "[o]ne cannot be penalized for passively asserting this right, regardless of one's motivation." *Id.* Other courts have ruled similarly,[6] and, as in *Palenkas*, we continue to agree with these holdings. *See also State v. Wilson*, 185 Ariz. 254, 258, 914 P.2d 1346, 1350 (App.1996) (stating in dicta that it is generally impermissible for a prosecutor to comment on a defendant's invocation of Fourth Amendment rights).

¶ 14 The Supreme Court's decisions in *Brecht* and *Jenkins*, which hold that a prosecutor can constitutionally use a defendant's pre–*Miranda* warnings silence to impeach a defendant who testifies at trial, do not persuade us to retreat from the holding in *Palenkas*. If a defendant chooses to waive the Fifth Amendment right to remain silent by testifying at trial, the prosecutor may impeach the defendant like any other witness, including inquiring about pre–*Miranda* warnings silence. *Jenkins*, 447 U.S. at 235–36, 100 S.Ct. 2124. Although the Court in *Jenkins* accepted that a person facing arrest may be compelled to speak rather than risk later impeachment with the failure to speak, it stated that the Constitution does not prohibit the government from compelling the defendant to choose either testifying at trial and risking impeachment with pre–*Miranda* warnings silence or refraining from testifying to avoid impeachment. 447 U.S. at 236–37, 100 S.Ct. 2124. "The 'threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.'" *Id.* at 236, 100 S.Ct. 2124 (internal quotation marks omitted) (citing *Chaffin v. Stynchcombe*, 412 U.S. 17, 32, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)). The Court reiterated a prior holding that the prospect of impeachment by prior silence is not an impermissible burden on Fifth Amendment rights, and is therefore constitutionally acceptable. *Id.* at 236–37, 100 S.Ct. 2124 (citing *Raffel v. United States*, 271 U.S. 494, 499, 46 S.Ct. 566, 70 L.Ed. 1054 (1926)).

¶ 15 Contrary to the State's contention, *Doyle*, *Brecht*, and *Jenkins* do not require the government to have implicitly promised not to penalize a defendant for invoking Fourth Amendment rights in order to preclude a prosecutor from using this invocation as substantive evidence of guilt at trial, as is the case with post–*Miranda* warnings silence. Using this invocation as direct evidence that the defendant committed the charged offense would "impair[ ] to an appreciable extent" the underlying policy of the Fourth Amendment to prohibit unreasonable searches. *See Chaffin*, 412 U.S. at 30, 93

---

6. *See, e.g., Palenkas*, 188 Ariz. at 210, 933 P.2d at 1278 (collecting cases); *Reeves v. State*, 969

S.W.2d 471, 495 (Tex.Ct.App.1998); *Longshore v. State*, 399 Md. 486, 924 A.2d 1129, 1159 (2007).

S.Ct. 1977; *Prescott*, 581 F.2d at 1351. If the Fourth Amendment is to provide rigorous protection against unlawful searches, occupants must not be dissuaded from exercising the right for fear of incurring a penalty in any subsequent criminal prosecution. As the Supreme Court stated more than a half century ago when interpreting a District of Columbia regulation proscribing interference with health inspections, "[t]he right to privacy in the home holds too high a place in our system of laws to justify a statutory interpretation that would impose a criminal punishment" on an occupant who passively protests a warrantless entry to conduct a health inspection. *District of Columbia v. Little*, 339 U.S. 1, 7, 70 S.Ct. 468, 94 L.Ed. 599 (1950). Similarly, invocation of the Fourth Amendment right generally must not be used to prove consciousness of guilt for an act that could *result* in criminal punishment.[7]

■ ¶ 16 For these reasons, we hold the court erred by permitting the State to introduce as direct evidence of guilt that Stevens invoked her Fourth Amendment rights and then argue she did so because she knew police would find illegal drugs and drug paraphernalia inside her house. The error was fundamental as it went to the foundation of the case—whether Stevens was the person who possessed the drugs and drug paraphernalia—and deprived Stevens of her right to invoke the protection of the Fourth Amendment with impunity. *See McGann*, 132 Ariz. at 298, 645 P.2d at 813. We therefore turn to the remaining question concerning this issue: Did the error prejudice Stevens? *Henderson*, 210 Ariz. at 568, ¶¶ 23–24, 26, 115 P.3d at 608.

■ ¶ 17 The actions of the prosecutor prejudiced Stevens in presenting her mere presence defense against the charge of possession of dangerous drugs. The police found the methamphetamine underlying the charge in Son's room; thus, it would have been reasonable for the jury to find that Son and not Stevens actually possessed the drugs. Evidence that Stevens protested entry into her home without a search warrant, coupled with argument that Stevens was motivated by her desire to prevent the police from discovering "her methamphetamine," pointed to Stevens as the one who possessed the drugs. Nothing else tied Stevens directly to those drugs. Because Stevens suffered fundamental, prejudicial error, we reverse her conviction and resulting disposition for possession of dangerous drugs and remand for a new trial on this charge.

■ ¶ 18 The record does not reveal that the prosecutor's actions prejudiced Stevens in defending against the charge of possession of drug paraphernalia. The police discovered paraphernalia in Stevens' bedroom. Additionally, the jury heard evidence that Stevens was holding a methamphetamine pipe when she confronted Son about taking things from her room. This evidence is more probative of Stevens' guilt for possession of drug paraphernalia than her invocation of Fourth Amendment rights. At most, the latter evidence is cumulative of evidence showing Stevens knew the drug paraphernalia was in her house. Consequently, Stevens did not suffer prejudice from the error, and we therefore affirm her conviction and resulting disposition for possession of drug paraphernalia.

## CONCLUSION

¶ 19 The prosecutor's use of Stevens' invocation of her Fourth Amendment right as

---

7. Subject to the rules of evidence, such evidence may be "admitted as a fair response to a claim by the defendant or for some other proper purpose." *United States v. Dozal*, 173 F.3d 787, 794 (10th Cir.1999). For example, a prosecutor may comment on a defendant's refusal to consent to a vehicle search in response to a claim that police planted drugs, *United States v. McNatt*, 931 F.2d 251, 258 (4th Cir.1991), or to establish dominion and control over a residence when the defendant asserts a "mere presence" defense, *Dozal*, 173 F.3d at 793–94. Under these circumstances, the evidence is not an unfair penalty for asserting a constitutional right. *McNatt*, 931 F.2d at 258. Such circumstances are not before us. Although Stevens asserted a mere presence defense, she did not claim to be a visitor to the house; she lived there. Her mere presence defense was based on the fact Son also lived in the house. Her exercise of dominion and control over the house, therefore, did not rebut her defense. By the State's admission, the prosecutor introduced the evidence solely to demonstrate that Stevens had something to hide and was therefore the likely person to have possessed the drugs and drug paraphernalia.

substantive evidence of her guilt under these circumstances was fundamental error. Because Stevens was prejudiced by the error in defending the charge of possession of dangerous drugs, we reverse her conviction and resulting disposition on this charge and remand for a new trial. But because Stevens did not suffer prejudice in defending the charge of possessing drug paraphernalia, and for the reasons stated in our companion memorandum decision, we affirm her conviction and resulting disposition on that charge.

CONCURRING: PATRICK IRVINE and DANIEL A. BARKER, Judges.