2013 COA 31

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Phillip James POLLARD, Defendant–Appellant.**

**No. 10CA0962**

Colorado Court of Appeals, Div. III.

Announced March 14, 2013

As Modified on Denial of Rehearing May 9, 2013

John W. Suthers, Attorney General, Nicole D. Wiggins, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Springer and Steinberg, P.C., Michael P. Zwiebel, Denver, Colorado, for Defendant–Appellant

Opinion by Judge DAILEY

¶ 1 Defendant, Phillip James Pollard, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of more than one gram of cocaine. He also appeals his adjudication as an habitual offender, for sentencing purposes. We reverse and remand for a new trial.

¶ 2 The police spotted defendant's unoccupied car at 3 a.m. in an otherwise vacant parking lot in a park. Approaching the car to ensure that it was not stolen, an officer, when looking inside the vehicle, noticed on the center console a plastic bag containing a substance he believed to be crack cocaine. When defendant—who had been walking around the park with a female friend—returned to his vehicle, he told the police that the car was his and that the substance on the center console was probably bubble gum.

¶ 3 Defendant was asked but refused to give the police consent to search his car; he was subsequently arrested; and the bag—containing 2.66 grams of cocaine—was seized from the vehicle. Drug paraphernalia—in the form of a crack pipe, a glass vial, and two resealable cloth bags—was in the friend's purse but nowhere else in the car.

¶ 4 At trial, defendant asserted that the cocaine belonged to the friend, not him, and that he did not know that it was in his car. The friend testified that the cocaine belonged to her, that she had brought it with her in her purse, that defendant did not know she had it with her, and that she had placed it on the center console only after defendant had gotten out of the car. In argument, defen-

dant attributed the decision to charge and prosecute him, rather than his friend, to racial stereotyping, that is, to an assumption that, because he was black, the drugs were his and he was using them to obtain sex from his "friend," a white woman.

¶ 5 The prosecution presented, for the purpose of showing motive, knowledge, identity, and absence of mistake or accident, evidence of a drug transaction that occurred fourteen months after the charges arose in this case. On that subsequent occasion, defendant sold crack cocaine to a woman in a grocery store parking lot; he was apprehended shortly thereafter by police; and crack cocaine was recovered from the center console of his car.

¶ 6 The jury convicted defendant, as charged, and, after adjudicating him as an habitual offender, the trial court sentenced him to a term of twenty-four years incarceration.

### I. Other Bad Act Evidence

¶ 7 Defendant contends that the trial court erroneously admitted evidence of his subsequent drug transaction with the woman in the grocery store parking lot. We disagree.

¶ 8 Despite his earlier objection to the receipt of other bad act evidence, at trial defendant admitted that it was relevant. He argued, though, that the evidence should be admitted only in the prosecution's rebuttal case because "questions of motive or accident, or inadvertence, mistake, have not yet been raised." The court disagreed, ruling that the prosecution was not limited to presenting the evidence on rebuttal because there were "contested issues linking Defendant to this crack cocaine."

¶ 9 On appeal, defendant reiterates his initial objection to the receipt of the evidence, that is, that it was inadmissible under CRE 404(b).

¶ 10 Trial courts have considerable discretion to decide questions concerning the admissibility of evidence, *People v. Rath*, 44 P.3d 1033, 1043 (Colo.2002), and an abuse of discretion will only be found upon a showing that the court misconstrued or misapplied the law or otherwise reached a manifestly arbitrary, unreasonable, or unfair result.

*See generally People v. Garcia*, 169 P.3d 223, 226 (Colo.App.2007).

¶ 11 Evidence of other bad acts is inadmissible if its relevance depends *only* on an inference that the person has a bad character and acted in conformity therewith. CRE 404(b); *People v. Cooper*, 104 P.3d 307, 309 (Colo.App.2004).

¶ 12 Under CRE 401, 403, and 404(b), however, a trial court may admit evidence of a defendant's other bad acts if (1) the evidence is offered for a proper purpose; (2) the evidence is logically relevant to a material issue in the case; (3) its relevance is independent of the intermediate inference that the defendant has a bad character; and (4) its probative value is not substantially outweighed by the danger of unfair prejudice. *Rath*, 44 P.3d at 1038.

¶ 13 On appeal, defendant contends that the evidence was not admissible for any of the purposes for which the court admitted it; that any purpose for which the evidence was proffered could not be proven from the subsequent transaction independently of an inference of bad character; and, that, in any event, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. We are not persuaded.

¶ 14 In our view, the trial court acted within the scope of its discretion in admitting evidence of defendant's subsequent possession and distribution of crack cocaine, particularly for the purpose of establishing his knowing possession of the crack cocaine in this case.

¶ 15 Defendant had originally told the police that the substance in the center console of his vehicle was probably bubble gum. Evidence of defendant's subsequent possession of crack cocaine found, again, in the center console of his car tended to prove, independently of any inference of bad character, that he was aware of the presence and nature of the crack cocaine in his car on this occasion as well. *See generally United States v. Davis*, 636 F.3d 1281, 1298 (10th Cir.2011) ("We have consistently 'recognized the probative value of uncharged acts to show motive, intent, and knowledge, whether the acts

involved previous conduct or conduct subsequent to the charged offense, as long as the uncharged acts are similar to the charged crime and sufficiently close in time.' ") (quoting *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir.2000)); *United States v. Olivo*, 80 F.3d 1466, 1468–69 (10th Cir.1996) (no error in admitting evidence of subsequent, similar narcotics activity separated by more than a year from the charged offense to show intent, knowledge, and lack of accident or mistake).

¶ 16 Further, assuming, as we must on appeal, the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected, *People v. James*, 117 P.3d 91, 94 (Colo.App.2004), we cannot conclude that the trial court was compelled to exclude the evidence because it was of such a character that the jury would have necessarily overlooked its legitimate probative force due to an overmastering hostility toward defendant.

¶ 17 Thus, we perceive no abuse of the court's discretion in admitting the other bad act evidence in this case. *See Olivo*, 80 F.3d at 1468–69; *see also United States v. Kelley*, 187 Fed.Appx. 876, 885 (10th Cir.2006) (evidence of defendant's sale of methamphetamine was admissible to show defendant's knowledge that the substance he was dealing with two and a half months earlier was methamphetamine); *cf. People v. Warren*, 55 P.3d 809, 815 (Colo.App.2002) ("[B]ecause defendant claimed a lack of knowledge, evidence that she had previously supplied methamphetamine to her roommate tended to make more probable than not that she was indeed aware of the methamphetamine in her bedroom dresser.").

## II. *Defendant's Refusal to Consent to a Search of the Car*

¶ 18 Defendant contends that reversal is required because the prosecution improperly elicited evidence of, and commented on, his refusal to consent to a search of his car. We agree.

¶ 19 At the inception of its opening statement, the prosecution informed the jury that "[t]his is a straightforward case wherein a failure to act speaks louder than words." Subsequently, the prosecution told the jurors that, on two occasions, defendant had refused to give his keys to the police so that they could search his car, saying, on the first occasion, "Nobody's searching my car," and, on the second occasion, "I'm not giving you my keys."

¶ 20 Consistent with its opening statement, the prosecution elicited testimony, on direct examination, (1) from one officer, that the officer asked defendant "for consent to search his car and remove that bag," and was told by him "that nobody searches his car"; and (2) from a second officer, that defendant was "not real cooperative," in that he was not complying with requests to or "readily willing" to "open the door" so that police could recover whatever was sitting on the console. In rebuttal, the prosecution again elicited evidence from the first officer that, when asked for consent to search his car, defendant responded by saying, "Nobody searches my car."

¶ 21 In closing argument, the prosecution stated:

[One officer] . . . heard the Defendant essentially being uncooperative in terms of let me look at you [sic] car. . . . [T] he officer's bells are going off. I want to check it out. And the Defendant's saying, no, no, no. . . . I[t]'s proper for you to consider that evidence, because, again, the Judge let it in. And when you consider that your reason and common sense tells you what does he have to hide? Why not let him go in?

¶ 22 Defendant objected neither to the evidence of, nor to the prosecution's comment about, his refusal to consent to a search of the car. Consequently, reversal is not warranted in the absence of plain error. *See* Crim. P. 52(b).

¶ 23 In *Hagos v. People*, 2012 CO 63, 288 P.3d 116, the supreme court discussed the purposes and limits of plain error review:

Plain error review reflects "a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly

redressed." Plain error review allows the opportunity to reverse convictions in cases presenting particularly egregious errors, but reversals must be rare to maintain adequate motivation among trial participants to seek a fair and accurate trial the first time.

*Id.* at ¶ 23 (citation omitted) (quoting *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)); see also *People v. Ujaama,* 2012 COA 36, ¶40, 302 P.3d 296 (noting that plain error "should provide a basis for relief only on rare occasions," in part because "it is difficult to 'fault a trial court for failing to rule on an issue that had not been presented to it' ") (quoting *United States v. Simmonds,* 931 F.2d 685, 688 (10th Cir.1991)).

¶ 24 Plain error is error that is "obvious and substantial." *Hagos,* ¶ 14.

### A. It Was Error to Allow Evidence of and Comment on Defendant's Refusal to Consent to the Search

■ ¶ 25 It is well settled that a person should not be penalized for exercising a constitutional privilege. *See Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972) ("For if the government could deny a benefit to a person because of his [exercise of] constitutionally protected [rights], his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which (it) could not command directly.' ") (quoting *Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958)); *Griffin v. California,* 380 U.S. 609, 614–15, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965) (encouraging jury to draw an inference of guilt based on a defendant's decision not to testify violates the defendant's Fifth Amendment right not to incriminate himself or herself); *Apodaca v. People,* 712 P.2d 467, 473 (Colo.1985) ("A constitutional right may be said to be impermissibly burdened when there is some penalty imposed for exercising the right."); *People v. Perry,* 68 P.3d 472, 476 (Colo.App.2002) ("A constitutional right may be impermissibly burdened when a penalty is imposed for exercising that right. Further, a defendant's exercise of his or her

rights is inherently ambiguous and, therefore, is not probative of guilt.") (citations omitted); *see also, e.g., People v. Rodgers,* 756 P.2d 980, 983 (Colo.1988) ("[A] defendant cannot be penalized for exercising his or her constitutional right to a trial by jury rather than trial to the court."), *overruled on other grounds by People v. Miller,* 113 P.3d 743 (Colo.2005); *People v. Butler,* 224 P.3d 380, 383 (Colo.App.2009) ("Vindictive prosecution that penalizes a defendant for exercising his or her constitutional rights is a denial of due process."); *People v. Richardson,* 58 P.3d 1039, 1046 (Colo.App.2002) ("A prosecutor may not refer to a defendant's silence during custodial interrogation to create an inference of guilt because such comment penalizes the defendant for exercising his or her constitutional right to remain silent and violates due process of law.").

■ ¶ 26 In prohibiting unreasonable searches and seizures, the Fourth Amendment to the United States Constitution necessarily grants to individuals the right to refuse warrantless entries and searches. *See Ramet v. State,*125 Nev. 195, 209 P.3d 268, 269 (2009); *see also United States v. Prescott,* 581 F.2d 1343, 1351 (9th Cir.1978) ("The [Fourth] Amendment gives [a defendant] a constitutional right to refuse to consent to entry and search.").

¶ 27 In *People v. Perry,* a division of this court recognized that "[a] defendant's due process rights may be violated when the prosecution uses at trial the defendant's refusal to consent to a search." 68 P.3d at 476. Ultimately, however, the division held that, "even if [it] assume[d] that [the defendant's due process rights were violated] when the police testified about [his] refusal to consent to a search, ... reversal [was] not required" because the evidence of his guilt was overwhelming, rendering harmless any error in the receipt of the evidence. *Id.*

¶ 28 Courts in other jurisdictions uniformly hold that the prosecution may not use evidence of a person's refusal to consent to a search to prove his or her guilt through an inference of guilty knowledge or consciousness of guilt. *See United States v. Clariot,* 655 F.3d 550, 555 (6th Cir.2011) ("The exercise of a constitutional right, whether to re-

fuse to consent to a search, to refuse to waive *Miranda* rights or to decline to testify at trial, is not evidence of guilt."); *United States v. Runyan*, 290 F.3d 223, 249 (5th Cir.2002) ("[T]he circuit courts that have directly addressed this question have unanimously held that a defendant's refusal to consent to a warrantless search may not be presented as evidence of guilt."); *Prescott*, 581 F.2d at 1351 ("[Refusing to consent to a search] cannot be a crime. Nor can it be evidence of a crime.... [I]f the government could use such a refusal against the citizen, an unfair and impermissible burden would be placed upon the assertion of a constitutional right and future consents would not be 'freely and voluntarily given.'") (citations omitted); *Padgett v. State*, 590 P.2d 432, 434 (Alaska 1979) (Fourth Amendment right to refuse consent "would be effectively destroyed if, when exercised, it could be used as evidence of guilt"); *State v. Stevens*, 228 Ariz. 411, 267 P.3d 1203, 1209 (Ct.App.2012) (court "erred by permitting the State to introduce as direct evidence of guilt that [the defendant] invoked her Fourth Amendment rights and then argue she did so because she knew police would find illegal drugs and drug paraphernalia inside her house"); *People v. Keener*, 148 Cal.App.3d 73, 195 Cal.Rptr. 733, 736 (1983) (use of evidence of refusal to consent to "demonstrate a consciousness of guilt merely serves to punish the exercise of the right to insist upon a warrant"); *Gomez v. State*, 572 So.2d 952, 953 (Fla.Dist.Ct.App. 1990) ("Comment on a defendant's denial of permission to search a vehicle, although not exactly the same thing as comment on a defendant's right to remain silent, since the Fourth Amendment is involved rather than the Fifth, constitutes constitutional error of the same magnitude.") (footnote omitted); *Mackey v. State*, 234 Ga.App. 554, 507 S.E.2d 482, 484 (1998) ("refusal to consent to the search cannot be used as evidence of guilty knowledge"); *State v. Wright*, 153 Idaho 478, 283 P.3d 795, 806 (Ct.App.2012) ("[E]liciting testimony from a witness regarding a defendant's refusal to consent to a search, when used for the purpose of inferring guilt, is prosecutorial misconduct...."); *Coulthard v. Commonwealth*, 230 S.W.3d 572, 584 (Ky. 2007) ("Generally, ... exercising one's privi-

lege to be free of warrantless searches is simply not probative (or has low probative value) to a determination of guilt, and thus, the defendant's right to not be penalized for exercising such a privilege is paramount."); *Longshore v. State*, 399 Md. 486, 924 A.2d 1129, 1159 (2007) ("A person has a constitutional right to refuse to consent to a warrantless search of his or her automobile, and such refusal may not later be used to implicate guilt. An unfair and impermissible burden would be placed upon the assertion of a constitutional right if the State could use a refusal to a warrantless search against an individual."); *People v. Stephens*, 133 Mich. App. 294, 349 N.W.2d 162, 163–64 (1984) (the Fourth Amendment gives the defendant the constitutional right to refuse to consent to a search and the assertion of that right cannot be evidence of a crime); *Ramet*, 209 P.3d at 270 ("The defendant's invocation of his Fourth Amendment right [to refuse consent to a search] cannot be used as evidence of a crime or consciousness of guilt...."); *State v. Banks*, 328 Wis.2d 766, 790 N.W.2d 526, 533–34 (Ct.App.2010) ("[I]t is a violation of the defendant's right to due process for a prosecutor to comment on a defendant's failure to consent to a warrantless search. It has long been a tenet of federal jurisprudence that a defendant's invocation of a constitutional right cannot be used to imply guilt ....") (citations omitted).

¶ 29 Courts recognize, however, that the prosecution may use evidence of a person's refusal to consent to a warrantless search *for purposes other than* to support an inference of guilt. *See Runyan*, 290 F.3d at 249 n. 18; *People v. Chavez*, 190 P.3d 760, 766 (Colo. App.2007) (upholding admission of evidence of a defendant's refusal to consent to a search to impeach the defendant's assertion that he did not live in a particular place); *see also Leavitt v. Arave*, 383 F.3d 809, 828 (9th Cir.2004) (evidence of refusal to voluntarily provide a blood sample was admissible to attack the defendant's claim of cooperation: "Before there was ever any mention of the blood test, [the defendant] had already launched himself on his theme of cooperation. The prosecutor was entitled to question that theme by showing that the leitmotiv was actually one of resistance."); *United States v.*

*Dozal,* 173 F.3d 787, 794 (10th Cir.1999) (evidence of refusal to consent to search was admissible where it was "introduced, not to impute guilty knowledge to [the defendant], but for the proper purpose of establishing dominion and control over the premises where a large part of the cocaine was found"); *United States v. McNatt,* 931 F.2d 251, 256–58 (4th Cir.1991) (evidence of refusal to consent to search was admissible as a fair response to the defendant's claim that Drug Enforcement Agency agent had planted cocaine in the defendant's truck; under such circumstances, use of the evidence was "not an unfair penalty for defendant's asserting a constitutional privilege"); *Coulthard,* 230 S.W.3d at 582 (evidence of refusal to consent to a search was admissible for rebuttal and impeachment of the defendant's claim of self-defense).

¶ 30 Under the case law, the prosecution impermissibly "uses" a person's refusal to consent to a search when it introduces evidence of the refusal, without having a proper purpose for admission of the evidence, *or* when it argues to the jury that such evidence is probative of guilt. *See Ramet,* 209 P.3d at 269; *see also Padgett,* 590 P.2d at 434 ("It was error to admit testimony of defendant's refusal, and error to comment on it during summation."); *Banks,* 790 N.W.2d at 534 ("[W]hen the State introduced testimony regarding [the defendant's] refusal to voluntarily submit a DNA sample, [the defendant's] attorney should have challenged the evidence. When the State commented on [the defendant's] refusal during closing, suggesting his refusal demonstrated consciousness of guilt, [the defendant's] attorney should have objected.").

■ ¶ 31 The introduction of this type of evidence is erroneous, even if it is not accompanied by, or followed with, an explicit reference or comment relating it to the defendant's consciousness of guilt:

[Ordinarily,] use by the prosecutor of the refusal of entry, like use of the silence by the prosecutor, can have but one objective to induce the jury to infer guilt. In the case of the silence, the prosecutor can argue that if the defendant had nothing to hide, he would not keep silent. In the case

of the refusal of entry, the prosecutor can argue that, if the defendant were not trying to hide something or someone ... she would have let the officer in. *In either case, whether the argument is made or not, the desired inference may be well drawn by the jury.* This is why the evidence is inadmissible in the case of silence. It is also why the evidence is inadmissible in the case of refusal to let the officer search.

*Prescott,* 581 F.2d at 1352 (emphasis added) (citations omitted); *seeState v. Walker,* 2009 WL 3644171, *1–6 (Ariz.Ct.App.2009) (unpublished opinion) ("Although the testimony and argument cited by defendant did not explicitly suggest that defendant's refusal to consent to a search was evidence of his guilt, the jury could reasonably have inferred from this evidence that he was trying to hide the methamphetamine in his back pocket from police because he knew that he was guilty of a crime."); *Commonwealth v. Welch,* 401 Pa.Super. 393, 585 A.2d 517, 519 (1991) ("To the extent an assertion of such a right [to refuse consent to a search] will often be construed by the lay juror as an indication of a guilty conscience, allowing testimony of the assertion of the right will essentially vitiate any benefit conferred by the extension of the right in the first instance, thus, rendering the right illusory."); *see alsoRunyan,* 290 F.3d at 250 (error to admit evidence of defendant's refusal to consent to search, but error harmless where prosecutor never otherwise alluded to the evidence and there was "very strong" evidence of defendant's guilt); *Reeves v. State,* 969 S.W.2d 471, 495 (Tex. App.1998) ("Allowing evidence of [the defendant's] refusal to consent to a warrantless search of his home was error.").

■ ¶ 32 For the reasons stated in these cases, we now hold that a person's refusal to consent to a search may not be used by the prosecution—either through the introduction of evidence or by explicit comment—to imply the person's guilt of a crime.

■ ¶ 33 The Attorney General asserts that, in this case, there was no violation of this principle because the evidence here was admitted not to raise an inference of guilt, but, rather, to show but one event in the

chain of events leading to defendant's arrest. In the first instance, this is not a "proper" purpose for which the evidence could be admitted. *See Prescott*, 581 F.2d at 1352 (rejecting assertion that evidence of a refusal to consent to a search should be admitted for the purpose of putting other facts in their true setting); *State v. Thomas*, 766 N.W.2d 263, 272 (Iowa Ct.App.2009) (rejecting assertion that evidence of refusal to consent to a search was admissible to give context to why police sought a search warrant). In the second instance, the Attorney General's assertion is contradicted by the prosecution's statement in closing argument, "[W]hat [did defendant] have to hide? Why not let [the police] go in?" *See Prescott*, 581 F.2d at 1352 (prosecution improperly uses evidence of refusal to consent to search by arguing "that, if the defendant were not trying to hide something or someone ... she would have let the officer in"); *United States v. Guess*, 756 F.Supp.2d 730, 747 (E.D.Va.2010) (it is improper to admit evidence of a defendant's refusal of consent "to show consciousness of guilt—to show that the Defendant knew he had something to hide, and therefore did not want law enforcement looking in his pickup truck").[1]

■ ¶ 34 The Attorney General also asserts that defendant is, in any event, precluded from obtaining relief here because by responding to the prosecutor's comment in opening statement, cross-examining several witnesses about his refusal to consent to the search, and admitting into evidence a police report referencing, among other things, that subject, he invited any error that occurred.

■ ¶ 35 "[A] party does not invite error when it responds to an error committed by the opposing party." *Wilson v. IHC Hosps., Inc.*, 289 P.3d 369, 390 (Utah 2012); *see also State v. Palenkas*, 188 Ariz. 201, 933 P.2d 1269, 1277–78 (Ct.App.1996) ("[T]he state fails to recognize that defense counsel's pur-

pose in eliciting that testimony on direct examination was to explain defendant's refusal to consent to a search of his car, which the prosecution had elicited from the two police officers in its case-in-chief.... [D]efendant's testimony on direct examination did not 'invite' error; it merely responded to it.").

¶ 36 Here, defense counsel, in response to the prosecution's comments in opening statement referencing, first, "a straightforward case wherein a failure to act speaks louder than words," and, then, defendant's failure to consent to the search, remarked only, "If a man says I don't want you to search my car because it's my car, will you find him guilty?" In cross-examining the officers, he briefly revisited certain characterizations of defendant's behavior made by the police and elicited an acknowledgment from them that defendant had a right to "say he doesn't want to give [the police] the keys to his car." And, in closing argument, defense counsel explicitly stated his reason for admitting the police report, that is, to show that only defendant was questioned by the police despite (1) the drugs being found in the car equidistant between where he had sat and his friend had sat, and (2) the recovery of drug paraphernalia only from the friend's purse. This, in turn, was used to argue that the police had, from the very beginning, made assumptions about the relative guilt of the two individuals based on their race.

¶ 37 Defense counsel did, on two occasions in closing argument, reference the topic of defendant's refusal to consent to the search of his car. In the first instance, he characterized the role of a police supervisor in advising fellow officers about "what to do with a man who didn't want to turn over his car keys." In the second instance, he referenced the topic to suggest why defendant consented to a search of his vehicle on a subsequent occasion.[2]

¶ 38 In our view, defendant did not inject the issue of his refusal to consent to the

---

1. *See also State v. Wright*, 2013 WL 123609 (Ariz. Ct.App. No. 2CA–CR 2011–0328, Jan. 10, 2013) (unpublished memorandum decision) (prosecutor improperly "maintained that this refusal demonstrated [the defendant] knew the stolen property was in his house, and she argued he would have consented to a search if he had 'nothing to hide'"); *People v. Wood*, 103 Cal.

App.4th 803, 127 Cal.Rptr.2d 132, 136 (2002) ("[D]efendant's invocation of his Fourth Amendment right [to refuse consent to a search] was improperly being used for the purpose of showing he had something to hide, or, in other words, demonstrating his consciousness of his guilt.").

2. In this regard, defense counsel stated, "[Defendant] probably could [have] learned a lesson

search of the car into the case. Nor did he testify to or otherwise take a position for which evidence of his refusal to consent would have been relevant rebuttal evidence. His references to the subject of his refusal to consent were not made in an effort to further a strategy or a tactic other than to ameliorate the effects of the prosecution's attempts to have the jury infer a consciousness of guilt on his part. Consequently, defendant did not "invite" error here. *Cf. Wilson*, 289 P.3d at 388 ("A party does not evince a distinct intent to waive his objection to improperly admitted evidence by attempting to ameliorate the damage caused by that evidence.").

### B. The Error Was "Obvious"

 ¶ 39 To qualify as "plain" error, an error must be so clear-cut, so obvious, that a trial judge should be able to avoid it without benefit of objection. *See People v. Beilke*, 232 P.3d 146, 152 (Colo.App.2009).

 ¶ 40 Ordinarily, for an error to be this "obvious," the action challenged on appeal must contravene (1) a clear statutory command, *see People v. Mosley*, 167 P.3d 157, 161–62 (Colo.App.2007); (2) a well-settled legal principle, *see People v. McBride*, 228 P.3d 216, 222 (Colo.App.2009) ("novelty does not provide a safe harbor for flagrantly improper arguments"); or (2) Colorado case law, *see Ujaama*, ¶ 42.

 ¶ 41 Here, there was not a statutory command. But there was the well-settled legal principle that a person should not be penalized for exercising a constitutional privilege; Colorado case law (*i.e., Perry* and *Chavez*) recognizing the potential applicability of this principle to a person's refusal to

consent to a search; and many out-of-state cases, all holding that a person's refusal to consent to a search cannot be used to imply guilt.[3] In light of the well-settled legal principle upon which this rule is based, the prior references in Colorado case law to the rule, and the uniformity with which numerous other courts have embraced the rule, we conclude that the rule (and any violation of it) should have been "obvious" to the trial court, despite the fact that there was no Colorado case law squarely on point.

### C. The Error Was "Substantial"

¶ 42 The error in admitting evidence of, and allowing the prosecution to argue, defendant's refusal to consent to a warrantless search as evidence of his guilt was "substantial" error.

 ¶ 43 To qualify for this part of the plain error test, an error "must ... be seriously prejudicial," *Ujaama*, ¶ 43, that is, it must "so undermine[ ] the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." *Hagos*, ¶ 14 (quoting *Miller*, 113 P.3d at 750).[4]

¶ 44 The evidence in this case was far from overwhelming. The cocaine was found in a plastic bag on a center console in defendant's car; his friend testified that it was her cocaine, and that she had placed it on the console without defendant's knowledge after he had gotten out of the car; and the only drug paraphernalia found in the car was found in the friend's purse.

¶ 45 Defendant's defense was that he did not knowingly possess the cocaine. The only permissible, affirmative evidence in the case that tended to show that he was aware of the presence and nature of the substance on the console, was the evidence of his subsequent possession, fourteen months later, of the

from his experience [in this case], if you say, no, I'd rather you don't search my car. He got hooked up when this happened, so it would seem like it would be a good idea, and according to the testimony he didn't protest the search of his vehicle [on the subsequent occasion]."

**3.** The uniform nature of case law from other jurisdictions is relevant in assessing the "obviousness" of an error. *See United States v. Whab*, 355 F.3d 155, 158 (2d Cir.2004) (a federal circuit court may notice plain error in the absence of

direct precedent from within the circuit or the Supreme Court if "other circuits have uniformly taken a position on an issue that has never been squarely presented to this Court").

**4.** In this regard, the error must impair the reliability of the conviction to a degree greater than that which would satisfy the "reasonable probability" standard of prejudice articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Hagos*, ¶¶ 16–19.

same type of substance in the same location in his car.

¶ 46 The prosecutor's evidence of, and comment about, defendant's refusal to consent to the search of his car went directly to the issue of his knowing possession of the drug. The "refusal to consent" issue was not an isolated reference, either. The prosecution commented on it in opening statement; the prosecution brought it up in evidence on direct examination of two witnesses in its case-in-chief and on direct examination of a rebuttal witness; and the prosecution explicitly emphasized it for the improper purpose in closing argument.

¶ 47 In our view, the recurring references to defendant's refusal to consent to the search, and the prosecution's explicit use of that evidence to imply guilty knowledge on his part, cast serious doubt on the reliability of his conviction, necessitating reversal for a retrial. *See Stevens,* 267 P.3d at 1209 (reversing, even though the error was not properly preserved for review, because the error "went to the foundation of the case," "deprived [the defendant] of her right to invoke the protection of the Fourth Amendment with impunity," and "prejudiced [her] in presenting her mere presence defense against the charge of possession of dangerous drugs"); *State v. Betancourt,* 151 Idaho 635, 262 P.3d 278, 284 (Ct.App.2011) (reversing, even though the error was not properly preserved for review: "The pivotal issue in [the] case was [the defendant's] knowledge of the methamphetamine. Perhaps the state's strongest evidence of [the defendant's] knowledge was his refusal to allow the officer to search the vehicle.").

### III. Other Issues

¶ 48 For the guidance of the parties and the trial court, we now comment, briefly, on several matters which were raised by defendant on appeal and are likely to recur on retrial:

- A police officer should be qualified as an expert before being asked to testify to such things as the street price for crack cocaine and the paraphernalia commonly used when consuming the crack cocaine. Such information cannot be expected to be possessed by ordinary citizens but is of a type requiring the application of or reliance on specialized skill, training, experience, or knowledge. Consequently, such information must be provided through expert, not lay, testimony. *See People v. Veren,* 140 P.3d 131, 137 (Colo.App. 2005).

- If defendant again pursues the reasons why he, rather than the friend, was ultimately charged in the case, he runs the risk of opening the door to the admission of evidence regarding the factors—including a person's criminal history—which go into charging decisions. *See generally Golob v. People,* 180 P.3d 1006, 1012 (Colo.2008) ("The concept of 'opening the door' represents an effort by courts to prevent one party in a criminal trial from gaining and maintaining an unfair advantage by the selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression.").

- The prosecution must not, in closing argument, minimize the importance of the beyond a reasonable doubt burden of proof. *See People v. Frazier,* 107 Ill.App.3d 1096, 63 Ill.Dec. 692, 438 N.E.2d 623, 627 (1982) (prosecutor may not lessen "the importance of the State's burden of proof by implying that reasonable doubt is merely a *pro forma* or a minor detail"). Nor should it suggest that a person be acquitted only if the jury is "sure" he or she is not guilty.

- The prosecution should also not insinuate that "somebody" coached a witness to testify falsely, absent evidence to that effect. *See Domingo–Gomez v. People,* 125 P.3d 1043, 1052 (Colo.2005) ("Without referencing any factual basis, the prosecutor's statement that the defendant and his friends collaborated in creating their stories cannot be considered a comment on a reasonable inference from the evidence. We can only conclude, therefore, that her remark that [the defendant] and his friends made up their stories was an improper statement of personal opinion.").

- And, contrary to defendant's belief, the notation of a nontestifying criminologist, verifying the fingerprint analysis in a report authored by the criminologist who testified during defendant's habitual offender proceeding, is not "testimonial" hearsay excludable under Confrontation Clause guarantees. "A nontestimonial statement is one made without the purpose of its use as evidence." *See* Sheila K. Hyatt, 23 Colo. Prac., Evidence § 802.4. Here, the "verification" was done, not for use as evidence, but for internal administrative purposes;[5] it was not relied upon by the prosecution, but pointed out by the defense; and it was, in any event, cumulative of the conclusion reached independently by the criminologist who testified in the case. *See People v. Griffin*, 985 P.2d 15, 19 (Colo.App.1998) ("[B]ecause the inferred hearsay statements by the other expert were merely cumulative of other evidence admitted ... we conclude that the error in admitting the inferred hearsay statements was harmless.").

¶ 49 The judgment of conviction is reversed and the case is remanded for a new trial.

Judge FURMAN and Judge BOORAS concur.

---

**5.** Specifically, laboratory guidelines required that a fingerprint comparison report be verified by a second lab technician by making a separate report via an endorsement on the initial fingerprint comparison report. No such verification requirement is needed to introduce a fingerprint report at an habitual offender proceeding; consequently, the notation appearing on the fingerprint comparison report was nontestimonial because it was "an informal record of data [intended] for internal purposes." *See People v. Lopez*, 55 Cal.4th 569, 147 Cal.Rptr.3d 559, 286 P.3d 469, 479 (2012).