NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MARIO DANNY DE LUNA, *Appellant.*

No. 1 CA-CR 19-0541
FILED 12-22-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-104974-001
The Honorable Ronee Korbin Steiner, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Kent E. Cattani joined.

---

**B A I L E Y**, Judge:

¶1        Mario Danny De Luna appeals his convictions and sentences for possession of a dangerous drug and possession of a narcotic drug.  He argues the trial court erred by admitting hearsay testimony and evidence that he invoked his Fourth Amendment rights during an encounter with police.  De Luna also challenges the court's denial of his motion for judgment of acquittal.  For the reasons that follow, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        Phoenix Police Officers Woodcock and Villafana were on patrol when they saw De Luna and another man, Norman, in an alley.  De Luna was crouching between two trash cans and manipulating something with his hands.  The officers approached with their vehicle lights flashing and commanded De Luna to stand up and show his hands.  De Luna initially failed to comply, and while he was turned away from the officers and "moving around a lot[,]" they heard a "clink . . . metal on metal" noise coming from De Luna's direction.

¶3        De Luna then stood up.  Officer Villafana noticed a syringe "on [De Luna's] ear kind of like you would put a pen or a pencil."  The officers secured De Luna and searched the area.  Alongside a chain link fence next to where De Luna had been crouching, the officers found a plastic-wrapped metal spoon with residue on it.  They then obtained permission from the owner of the adjacent residential property to search his yard.  There, the officers found two small plastic baggies—one containing methamphetamine and the other heroin.  Villafana later interviewed De Luna who admitted he was in the alley "to score some . . . drugs."

---

[1]        We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant.  *State v. Harm*, 236 Ariz. 402, 404, ¶ 2 n.2 (App. 2015).

¶4　　　　The State charged De Luna with possession of dangerous drugs (methamphetamine) and possession of narcotic drugs (heroin), both class 4 felonies. The jury rejected De Luna's "mere presence" defense and found him guilty of both offenses. The trial court imposed concurrent eight-year prison terms. De Luna timely appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

I.　　　Testimony Regarding De Luna's Noncompliance

¶5　　　　De Luna claims his noncompliance with the officers' orders when they encountered him in the alley constituted an invocation of his Fourth Amendment right to "refuse a seizure." Noting that invocation of the Fourth Amendment's protection against unlawful searches may not be used as evidence of guilt, De Luna attempts to expand this principle and argues the trial court fundamentally erred by permitting officers Woodcock and Villafana to testify about his noncompliance. *See State v. Palenkas*, 188 Ariz. 201, 212, 214 (App. 1996) (finding reversible error where prosecutor presented evidence showing defendant invoked Fourth Amendment right by refusing detectives' request to inspect his vehicle); *see also State v. Stevens*, 228 Ariz. 411, 415-16, ¶¶ 11-12 (App. 2013) (clarifying *Palenkas*'s holding).

¶6　　　　To prevail under fundamental error review, De Luna bears the burden to prove either error and resulting prejudice, or that the error "was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 140, 142, ¶¶ 12, 21 (2018). He fails to do so.

¶7　　　　The Fourth Amendment prohibits the police from making unreasonable searches and seizures, *Terry v. Ohio*, 392 U.S. 1, 9 (1968), and evidence obtained in violation of a person's Fourth Amendment rights is generally inadmissible at trial, *State v. Hackman*, 189 Ariz. 505, 508 (App. 1997). Further, when a person invokes his Fourth Amendment rights by refusing consent to a warrantless search, that invocation cannot later be used as evidence of guilt. *State v. Wilson*, 185 Ariz. 254, 258 (App. 1995).

¶8　　　　The question here is whether De Luna's failure to abide by police orders to stand up and show his hands constituted an invocation of his Fourth Amendment right to be free from an unreasonable *seizure*. If his noncompliance did amount to such an invocation, evidence of his refusal arguably should not have been admitted at trial.

**¶9**        De Luna's argument fails.  As an initial matter, De Luna was not subject to an unreasonable seizure when he refused the officers' orders to stand up.   Instead, the officers were conducting a constitutionally justified investigatory stop.  *See State v. Rogers*, 186 Ariz. 508, 510 (1996) (stating an investigatory stop is a seizure that is justified under the Fourth Amendment if it is "'supported by reasonable suspicion' that criminal activity is afoot") (quoting *Ornelas v. United States*, 517 U.S. 690, 693 (1996)).[2] De Luna does not argue otherwise.

**¶10**        Also, De Luna cites no authority, and we are unaware of any, that recognizes an individual's right to refuse compliance with a police officer's reasonable requests during an investigatory stop such that the refusal invokes the person's Fourth Amendment rights.  Indeed, the law is to the contrary.  Evidence of a defendant's flight or concealment of evidence in response to a police officer's constitutionally justified command to "Stop" or "Freeze" is generally *admissible* to indicate a defendant's consciousness of guilt.  *State v. Cota*, 229 Ariz. 136, 142, ¶ 11 (2012); *State v. Smith*, 113 Ariz. 298, 300 (1976); *see State v. Cutright*, 196 Ariz. 567, 570, ¶ 12 (App. 1999) (instructing the jury on flight is appropriate when a defendant's conduct manifests a consciousness of guilt), *overruled on other grounds*, 200 Ariz. 67 (2001).

**¶11**        Thus, De Luna did not establish that he invoked his Fourth Amendment rights, and his refusal to obey the officers' orders was admissible to show his consciousness of guilt.   Accordingly, the trial court was not required to *sua sponte* preclude evidence of De Luna's noncompliance.  No error occurred, let alone fundamental error requiring reversal.  *See Escalante*, 245 Ariz. at 142, ¶ 21 (first step in fundamental error review is determining whether error occurred).

II.    Hearsay

**¶12**        Officers Woodcock and Villafana testified that, unlike De Luna, Norman immediately complied with their orders to show his hands. Officer Villafana further testified that the homeowner  was not hesitant or suspicious when giving the officers permission to search his yard; rather, he was compliant and helpful.  Because Norman and the homeowner did

---

2        Woodcock testified that De Luna's and Norman's presence in the alley constituted "obstruct[ion] [of] a thoroughfare," a violation of "city code."

not testify at trial, De Luna argues that the officers' testimony describing their conduct amounted to inadmissible hearsay. We find no error.[3]

**¶13** Hearsay is generally inadmissible and is defined as "a statement that . . . the declarant does not make while testifying at the current trial . . . and . . . a party offers in evidence to prove the truth of the matter asserted in the statement." Ariz. R. Evid. 801(c), 802. "'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Ariz. R. Evid. 801(a). "The effect of the definition of 'statement' is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion. The key to the definition is that nothing is an assertion unless intended to be one." Fed. R. Evid. 801, advisory committee note to subdivision (a).

**¶14** Here, Norman's and the homeowner's compliant responses to the officers were not intended as assertions; thus, they were not "statements" for hearsay purposes. Norman merely showed his hands in response to the officers' demands to do so, and the homeowner acquiesced to the officers' request to search his yard. Nothing indicates those responses were intended to communicate any implicit belief about a fact pertaining to De Luna's culpability. Indeed, as for the homeowner, nothing in the record indicates he knew that the officers were investigating a possible drug offense. Because the officers did not testify about Norman's or the homeowner's statements, their testimony was not subject to preclusion under the hearsay rule. *See State v. Chavez*, 225 Ariz. 442, 444, ¶ 8 (App. 2010) ("Put simply, words or conduct not intended as assertions are not hearsay even when offered as evidence of the declarant's implicit belief of a fact.").

III. Motion for Judgment of Acquittal

**¶15** De Luna contends the trial court erred by denying his motion for judgment of acquittal, arguing the evidence failed to demonstrate he possessed the drugs. *See* Ariz. R. Crim. P. 20(a)(1) (stating a motion for

---

[3] De Luna contends we review admission of the testimony for an abuse of discretion. In response, the State argues fundamental error is the appropriate standard of review because De Luna did not object to the testimony at trial. Because we find no error, we need not resolve this procedural issue.

judgment of acquittal must be granted when "there is no substantial evidence to support a conviction"). We disagree.

**¶16**        In determining whether substantial evidence would support a conviction for purposes of ruling on a Rule 20 motion, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011) (quoting *State v. Mathers*, 165 Ariz. 64, 66 (1990)). "When reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *State v. Lee*, 189 Ariz. 590, 603 (1997). Thus, we review *de novo* a trial court's denial of a Rule 20 motion. *State v. Bible*, 175 Ariz. 549, 595 (1993).

**¶17**        De Luna's furtive behavior and noncompliance with the officers' orders to stand up circumstantially indicated De Luna was knowingly engaged in illegal activity. *See State v. Bearup*, 221 Ariz. 163, 167, ¶ 16 (2009) ("Criminal intent, being a state of mind, is shown by circumstantial evidence. Defendant's conduct . . . [is] evidence of his state of mind." (quoting *State v. Routhier*, 137 Ariz. 90, 99 (1983)). Then, after De Luna complied and was detained, the officers found heroin and methamphetamine in addition to a residue-encrusted spoon within his "arms reach."[4] Further, De Luna had a syringe behind his ear, and officer Woodcock explained for the jury that heroin is ingested by first heating the drug in a spoon until it liquifies before injecting it into the body with a syringe. Finally, De Luna admitted he was in the alley to purchase drugs.

**¶18**        Based on the foregoing circumstantial evidence, the jury could reasonably conclude De Luna physically possessed the drugs until he tossed them into the adjoining yard in an attempt to avoid detection. *See* A.R.S. § 13–105(34) ("'Possess' means knowingly to have physical possession or otherwise to exercise dominion or control over property."). Accordingly, the State presented substantial evidence of De Luna's guilt, and the court properly denied his Rule 20 motion.

---

[4]        Although the officers' testimony differed as to the precise location of the drugs and spoon, such a discrepancy did not, as De Luna suggests, require the trial court to grant his Rule 20 motion. *See State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (stating credibility of witnesses and weight to be afforded evidence are issues to be resolved by the jury).

**CONCLUSION**

¶19        De Luna's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:     AA