NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL DELVIN LEWIS, *Appellant.*

No. 1 CA-CR 20-0010
FILED 12-15-2020

Appeal from the Superior Court in Yavapai County
No. V1300CR201780595
The Honorable Michael R. Bluff, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Law Office of Gonzales & Poirier, P.L.L.C., Flagstaff
By Tony Gonzales
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

---

**C R U Z**, Judge:

¶1        Michael Delvin Lewis appeals his convictions and sentences for one count of aggravated driving while under the influence (license suspended), a Class 4 felony; one count of unlawful flight from law enforcement, a Class 5 felony; and four counts of endangerment, Class 6 dangerous felonies. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Around 9:00 p.m. one evening, Lewis merged into a roundabout without yielding and nearly collided with a police officer's vehicle. Lewis then drove over the roundabout's curb and through the roundabout center, prompting the officer to activate his emergency lights. Lewis did not pull over and drove toward I-17. As Lewis attempted to turn onto I-17, he almost hit a vehicle traveling in the opposite direction, and the vehicle had to stop to avoid being hit head-on by Lewis.

¶3        As Lewis merged onto I-17, the officer estimated Lewis' speed to be up to 90 miles per hour. Lewis approached another vehicle, forcing it to move to the right shoulder to avoid being rear-ended by Lewis. The officer then activated his siren, continued to pursue Lewis, and observed Lewis' tires hitting the center lane line. Cars driving to Lewis' right were forced to move out of the way to avoid being hit. The officer estimated that Lewis was driving about 120 miles per hour.

¶4        Lewis suddenly swerved across two lanes of traffic to exit the highway. To pass slower vehicles, Lewis drove around the cars in the opposing traffic lane. Lewis drove through a stop sign and turned left toward another vehicle making a turn. The driver of the turning vehicle was forced to stop and allow Lewis to drive around him to avoid a collision. After the turn, Lewis abruptly stopped and exited his vehicle. The officer commanded Lewis to get on the ground, and Lewis complied. The officer handcuffed Lewis, and as he escorted Lewis to his patrol car, the officer

detected an odor of alcohol on Lewis. The officer also noted that Lewis stumbled as he walked to the police car.

¶5        The officer placed Lewis in the back of the car and completed an inventory search of Lewis' car. Two other officers arrived as back up. The officers saw an open can of beer in the center console of Lewis' car, as well as an opened thirty-pack case of beer in the passenger seat. An officer returned to the police vehicle to speak with Lewis and found Lewis sleeping or unconscious. The officer removed Lewis from the back of the vehicle and requested a medical team. While waiting for the medics to arrive, the officer woke Lewis by performing a "sternum rub" on Lewis. The officer noted that Lewis seemed confused, stating he did not know why the police were there and why they were talking to him. All three officers detected the odor of alcohol, and they noticed Lewis' eyes were bloodshot and watery, that he swayed while seated, and slurred his speech as he spoke.

¶6        Police learned that Lewis' driver's license was revoked in 2004. Lewis declined to perform standard field sobriety tests and refused to consent to a breath or blood sample.[1] Lewis was transported to the police station and charged with aggravated driving under the influence with a suspended license, unlawful flight from a law enforcement vehicle, and four endangerment counts.

¶7        Following three days of trial, the jury found Lewis guilty on all counts as charged. The superior court sentenced Lewis as a repetitive offender to concurrent and consecutive prison terms totaling fifteen-and-a-quarter years. Lewis timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and 13-4033(A)(1).

---

[1]        Officers obtained a telephonic search warrant to perform a blood draw and determine Lewis' blood alcohol content. However, before the trial, Lewis successfully challenged the warrant because the officers failed to record the telephone conversation with the judge and one page of the warrant was missing the judge's signature. As a result, the court found it was unable to determine the basis on which the magistrate had issued the warrant.

**DISCUSSION**

¶8         Lewis argues the State committed prosecutorial misconduct by making several improper statements during closing arguments that deprived him of a fair trial and due process of law.[2]

¶9         Prosecutors are given wide latitude in their closing arguments to the jury. *State v. Boag*, 104 Ariz. 362, 366 (1969). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007) (quoting *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998)) (internal quotation marks omitted). Prosecutorial misconduct constitutes reversible error only if "a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial." *Id.* (quoting *State v. Anderson*, 210 Ariz. 327, 340, ¶ 45 (2005)).

¶10         We first assess each claim of misconduct individually. The applicable standard of review depends upon whether there was an objection to the alleged misconduct. *State v. Arias*, 248 Ariz. 546, 555, ¶ 31 (App. 2020). When a defendant objects to a comment in closing argument, we review for harmless error. *Id.* "Harmless error review places the burden on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005). However, if the defendant fails to object, we review only for fundamental error. *Arias*, 248 Ariz. at 555, ¶ 31. Fundamental error is an error that goes to the foundation of the case, error that takes from the defendant a right essential to his defense, or error so egregious the defendant could not possibly have received a fair trial. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). To prevail, a defendant must establish both that fundamental error exists and that the error caused him prejudice. *Henderson*, 210 Ariz. at 567, ¶ 20.

¶11         After determining which claims constitute error, we review the cumulative misconduct to determine whether the total effect rendered the defendant's trial unfair. *State v. Hulsey*, 243 Ariz. 367, 388, ¶ 88 (2018). Where a defendant claims multiple incidents of prosecutorial misconduct,

---

2         Lewis does not argue, and we do not separately find, that any prosecutorial misconduct committed here also equated to professional or ethical misconduct by the prosecutor. *See In re Martinez*, 248 Ariz. 458, 469-70, ¶¶ 42-47 (2020).

for which he failed to object, cumulatively deprived him of a fair trial, the defendant must:

> 1) assert cumulative error exists; 2) cite to the record where the alleged instances of misconduct occurred; 3) cite to legal authority establishing that the alleged instances constitute prosecutorial misconduct; and 4) set forth the reasons why the cumulative misconduct denied the defendant a fair trial with citation to applicable legal authority.

*State v. Vargas*, 249 Ariz. 186, 190, ¶ 14 (2020).

I.      Comments About Lewis Going on a "Beer Run"

**¶12**      Lewis argues that the State improperly testified to facts not in evidence by stating that Lewis had gone on a "beer run."  Specifically, the prosecutor began his closing arguments by saying:

> The State's theory of the case is as follows: In the evening of October 27th, 2017, the defendant was drinking some time before 9:00 p.m.  He ran out of alcohol and he needed to do a beer run.  The defendant made a decision to get into his vehicle --.

At this point, defense counsel objected to the remarks, stating the prosecutor was arguing facts not in evidence by claiming the defendant had been consuming alcohol before he ran out and needed to go on a "beer run." The court called the parties to the bench for a conference out of the jury panel's hearing.  The court agreed that there was no evidence of any kind of a "beer run" but ultimately decided to overrule the objection after the prosecutor stated he would move on.

**¶13**      While prosecutors are permitted to argue "all reasonable inferences from the evidence," they cannot "make insinuations that are not supported by the evidence." *Hughes*, 193 Ariz. at 85, ¶ 59.  The State argues that the prosecutor made a reasonable inference based upon the evidence, which included a police officer observing Lewis driving erratically, leading the officer to suspect Lewis was intoxicated and to conduct a traffic stop. And upon conducting that traffic stop, the officer found a case of beer in the passenger seat of Lewis' car.  Even assuming the "beer run" argument was not a reasonable inference based upon the admitted evidence, the comment was brief and inconsequential, and we cannot say it affected the jury's verdict. *See Hulsey*, 243 Ariz. at 392, ¶ 114.

¶14        Although Lewis contends this statement "purposely injected evidence 'of a beer run' into the case" to "support the State's theory that he was heavily impaired or drunk," the State only needed to prove Lewis was impaired to the slightest degree.    Further, the prosecutor properly characterized his argument that Lewis went on a "beer run" as the State's theory of the case.  The court instructed the jurors that anything said in closing arguments was not evidence and "[w]e presume that the jurors followed the court's instructions."  *See State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006).  We find no error.

II.      Comments About Lewis' Driving Speeds and the Risk of an Accident

¶15        Lewis also argues that the prosecutor improperly referenced specialized knowledge and scientific opinions during closing arguments when discussing Lewis' driving speed.  The prosecutor stated:

> Of course as the speeds get up, the likelihood of death substantially increases.  And we all know from, once again, life experience, when things happen at 70, 75 miles per hour on a highway, 90 miles per hour on a highway, they don't end good.  Vehicles just aren't equipped to -- to handle crashes that bad.  And we know from our experience that had there been an accident, had the defendant hit one of those cars, the possibilities that could have happened are unlimited and that a substantial and imminent risk was imposed to all those who the defendant nearly struck being killed due to high speed, highway speeds.

Lewis contends the prosecutor "attempted to mask" the statements as common sense, when in reality this "sort of testimony comes from accident reconstruction experts or scientific evidence or physics, and is not within the general knowledge or common sense of a lay person or juror."  Lewis did not object to these statements at trial.  Therefore, Lewis has waived review of this claim on appeal unless this court finds fundamental error. *Arias*, 248 Ariz. at 555, ¶ 31.

¶16        The prosecutor committed no error by making these statements, let alone fundamental error.  It is common knowledge that increased driving speeds increase the likelihood of death in the event of an accident. *See Hernandez-Diaz v. State*, 577 S.W.3d 757, 759-60 (Ark. Ct. App. 2019) (stating that "common sense" supported conclusion that driver "endangered others and manifested extreme indifference to human life" through excessive speed (approaching 115 mph) and aggressive driving);

*Can. Life Assurance Co. v. Pendleton Mem'l Methodist Hosp.*, Civ. A. 98-3469, 1999 WL 243653, at *4 (E.D. La. 1999) ("The dangers of driving while intoxicated and driving at excessive rates of speed while eluding arrest are common knowledge . . . ."). The prosecutor was not required to hire an accident reconstructionist to testify as to Lewis' risk when speeding, as Lewis contends on appeal. These statements were not improper and did not result in error.

III.     Refusal Evidence

¶17          Lewis also argues that the prosecutor improperly commented on Lewis' refusal to submit to breath or blood tests. Section 28-1388(D) provides that:

> If a person under arrest refuses to submit to a test or tests under section 28-1321, whether or not a sample was collected pursuant to subsection E of this section or a search warrant, evidence of refusal is admissible in any civil or criminal action or other proceeding. The issue of refusal is an issue of fact to be determined by the trier of fact in all cases.

A.R.S. § 28-1388(D). Lewis contends that although his refusal to submit to testing was admissible, the prosecutor committed misconduct by stating Lewis' refusal was indicia of his guilt.

¶18          Following the State's presentation of evidence and out of the presence of the jury, defense counsel brought up his concern to the superior court regarding the admission of Lewis' refusal to submit to sobriety testing:

> The whole idea that the State can argue that his refusal is indicia of his guilt is a violation of the Fifth Amendment. If counsel gets up and argues that, I'm going to object during his closing. I'd rather not do that. I don't like to do that, but I don't think you can argue that. You certainly can bring it up, but the case law says you can bring it up and say he refused, but you can't argue saying because he refused obviously he was guilty.

The superior court agreed with defense counsel, and the prosecutor responded:

> And, Judge, the State's argument would be he refused, not the result is that he's guilty, but there's a reasonable inference to

7

be drawn from that refusal and that -- that reasonable inference the State would infer is that he is under the influence of alcohol.

The superior court responded:

I think that gets close. You know, I'm not sure exactly what you're going to argue to the jury, but if [defense counsel] objects to that or you're trying to get them to make the inference because he refused he must be drunk, I think that's an improper inference for the State.

The prosecutor stated he understood defense counsel's position, as well as the court's position.

¶19 However, during closing arguments, the prosecutor stated:

Defendant's refusal to provide a blood and breath test. There's a reasonable inference to be drawn from that. The reasonable inference why the defendant did not want to provide breath or blood to a law enforcement officer in this case is because he knew his level of impairment and he knew that if he submitted to a test it would not show well for him, it would not work in the benefit of -- in his benefit. It would not exonerate him. It would convict him and so he chose not to provide that evidence.

Defense counsel did not object to the statements. Later during closing, the prosecutor again referenced Lewis' refusal to submit to sobriety tests:

Defendant's refusal to perform standard field sobriety tests. It's a reasonable inference that those tests are there to determine one's level of impairment. Defendant refused to do those and the reasonable inference to be drawn from that is that the defendant needed --.

¶20 Defense counsel objected before the prosecutor could finish his sentence, and the superior court called a bench conference and excused the jurors for a recess. Defense counsel stated that the prosecutor "was getting ready to the say the inference is that [Lewis] was under the influence." Once more, the court warned the prosecutor, "I'm not going to let you say the inference is he was under the influence so figure out something else to say." When the jury returned, the prosecutor once more commented on Lewis' refusal during closing, arguing that on the night of

his arrest, Lewis was "not cooperating with the DUI investigation because he knew it wouldn't work in his favor." Defense counsel did not object to this statement.

**¶21** "In evaluating the propriety of a prosecutor's argument, this court analyzes whether the remarks called to the jurors' attention matters that they should not consider, and whether, 'under the circumstances of the particular case, [the remarks] probably influenced' the jurors." *State v. Roque*, 213 Ariz. 193, 224, ¶ 128 (2006) (quoting *Sullivan v. State*, 47 Ariz. 224, 238 (1936), *abrogated on other grounds*, *State v. Escalante-Orozco*, 241 Ariz. 254 (2017), *abrogated on other grounds by Escalante*, 245 Ariz. at 140 ¶¶ 15–16). Here, the prosecutor's comments were improper. Although A.R.S. § 28-1388(D) allows for the admission of Lewis' refusal to submit to blood or breath tests, the prosecutor went too far in commenting on Lewis' guilt.

**¶22** While the United States Supreme Court has not held that Fourth Amendment protections apply to criminal defendants subjected to alcohol breath tests, the Court has held that a compelled blood draw is subject to Fourth Amendment constraints. *See Birchfield v. North Dakota*, 136 S. Ct. 2160, 2177-78 (2016) (noting breath tests do not implicate significant privacy concerns); *Missouri v. McNeely*, 569 U.S. 141, 148 (2013) (describing a blood draw as "an invasion of bodily integrity [that] implicates an individual's 'most personal and deep-rooted expectations of privacy'" (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985))); *see also State v. Butler*, 232 Ariz. 84, 87, ¶ 10 (2013). Because Lewis has a Fourth Amendment right to refuse a blood draw, the prosecutor improperly used this refusal as direct, substantive evidence of Lewis' guilt when he indicated Lewis refused the test because he was impaired. *See State v. Stevens*, 228 Ariz. 411, 417, ¶ 16 (App. 2012) (holding it was error to permit "the State to introduce as direct evidence of guilt that [the defendant] invoked her Fourth Amendment rights and then argue she did so because she knew police would find illegal drugs and drug paraphernalia inside her house" in a case involving defendant's refusal to allow a warrantless search of her home); *see also State v. Palenkas*, 188 Ariz. 201, 212 (App. 1996) (finding violation of due process rights to a fair trial in a case involving defendant's refusal to consent to a warrantless search because the prosecutor "creat[ed] an inference that defendant's invocation of constitutional rights was evidence of his guilt").

**¶23** Undoubtedly, admitting evidence of a defendant's refusal to submit to sobriety testing is an important and judicially recognized legal consequence to deter impaired driving. *See Birchfield*, 136 S. Ct. at 2169, 2185; *McNeely*, 569 U.S. at 161; *South Dakota v. Neville*, 459 U.S. 553, 560 (1983). However, the legal consequence of such a refusal is not without its

limitations. *See Birchfield*, 136 S. Ct. at 2185-86 ("Motorists may not be criminally punished for refusing to submit to a blood test based on legally implied consent to submit to them."). Because, at a minimum, Lewis has a Fourth Amendment right to refuse a compelled blood draw, the prosecutor went a step too far in telling jurors the reasonable inference to be drawn from Lewis' refusal is that he was impaired, instead of allowing the jurors to draw their own inferences.

¶24         Defense counsel did not make timely objections to the prosecutor's comments. Defense counsel objected twice to the prosecutor stating Lewis' refusal to submit to testing gave rise to the inference that he was intoxicated. However, both objections were in anticipation to the prosecutor making such statements. Defense counsel did not object once the prosecutor actually made these statements, e.g., that Lewis did not cooperate with the DUI investigation because "he knew his level of impairment," cooperation "would not exonerate him" but "it would convict him," and sobriety testing "wouldn't work in his favor." *See State v. Moody*, 208 Ariz. 424, 464, ¶ 179 (2004) (finding a failure to make a contemporaneous objection to prosecutor's comments limited court's review "to one for fundamental error only"); *see also State v. Lopez*, 217 Ariz. 433, 434-35, ¶ 4 (App. 2008) (explaining to preserve an issue for appeal, a party must make a timely objection, stating the specific ground of the objection to give the court an opportunity to correct any error). Thus, we review for fundamental error.

¶25         The State presented evidence that Lewis drove through a stop sign, nearly hit a police officer's vehicle, drove up the curb of a roundabout, refused to immediately pull over after the officer turned on his lights and sirens, crossed over the lane lines, drove on the wrong side of the road, nearly collided with other vehicles, and drove at very high speeds. The State also presented evidence that once Lewis was finally detained, multiple officers smelled alcohol on Lewis, observed he had watery and bloodshot eyes, slurred his speech, and had difficulty walking or standing. Officers also testified that Lewis momentarily passed out in the police car's backseat shortly after detaining him. Given that the prosecutor was allowed to admit into evidence Lewis' refusal to submit to testing, and given the overwhelming evidence supporting Lewis' convictions, on balance, the prosecutor's comments on Lewis' guilt did not deprive him of a fair trial or due process. *See Newell*, 212 Ariz. at 403-04, ¶ 70; *Arias*, 248 Ariz. at 564, ¶ 73.

IV.     Appeal to the Jury's Passions and Fears

¶26          Lewis argues the prosecutor improperly argued and appealed to the passions and fears of the jury.  During closing, the prosecutor stated:

> You are the voice of this community.  The State asks you to hold him accountable.  Look at the facts.  Make the decision. Hold him accountable for his actions.  You're on the highway. Your children are on the highway.  We all share that highway.

Defense counsel asked to approach the bench, and the court denied his request.  The prosecutor continued:

> This is a social contract that we agree to.  It's a promise that each and everyone of us makes to each other before we get in that vehicle because if you can imagine the carnage, the death and destruction should we ignore the common rules of the road.  There's already enough accidents.  The defendant violated that principle and that promise to you.

After closing arguments concluded and the jury left to deliberate, Lewis' counsel made a mistrial motion based upon the prosecutor's statements. The court agreed that the statements were inappropriate, although it did not think the comments rose to the level of requiring a mistrial.  The court denied the motion, finding the comments were brief and not repeated multiple times.

¶27          Lewis contends the court erred in denying the motion for a mistrial.  We review the superior court's denial of a motion for mistrial for an abuse of discretion.  *State v. Blackman*, 201 Ariz. 527, 538, ¶ 41 (App. 2002). Although the comments were inappropriate, the court did not abuse its discretion in denying the motion for mistrial.

¶28          Counsel may not make arguments that appeal to the passions and fears of the jury, and the prosecutor did just that by describing "the carnage, the death and destruction" that can result from violating traffic laws, and that the jurors and their children drive on the highway.  *See State v. Mincey*, 115 Ariz. 472, 484 (1977), *rev'd on other grounds*, 437 U.S. 385 (1978). The prosecutor's comments went beyond the bounds of appropriate closing argument, and we strongly disapprove of them.  However, we conclude this error was harmless beyond a reasonable doubt.  Given the overwhelming evidence of Lewis' guilt, the prosecutor's comments did not contribute to the verdict.  *See Chapman v. California*, 386 U.S. 18, 22-23 (1967); *State v. Anderson*, 110 Ariz. 238, 241 (1973).  Additionally, "a mistrial is a

'most dramatic' remedy that 'should be granted only when it appears that that is the only remedy to ensure justice is done.'" *Blackman*, 201 Ariz. at 538, ¶ 41 (quoting *State v. Maximo*, 170 Ariz. 94, 98-99 (App. 1991)). We find reversal is not necessary to ensure justice in this case.

V.     Cumulative Effect

**¶29**     Even if individual instances of prosecutorial misconduct do not amount to error, their cumulative effect may demonstrate "that the prosecutor intentionally engaged in improper conduct and 'did so with indifference, if not a specific intent, to prejudice the defendant.'" *Roque*, 213 Ariz. at 228, ¶ 155 (quoting *Hughes*, 193 Ariz. at 80, ¶ 31). "When assessing cumulative error, this Court 'consider[s] whether persistent and pervasive misconduct occurred . . . .'" *Hulsey*, 243 Ariz. at 394, ¶ 122 (quoting *State v. Lynch*, 238 Ariz. 84, 100, ¶ 51 (2015)). "We do not, however, reverse convictions merely to punish a prosecutor's misdeeds nor to deter future misconduct." *State v. Cornell*, 179 Ariz. 314, 328 (1994).

**¶30**     We conclude Lewis "was convicted based upon the overwhelming evidence of [his] guilt, not as a result of prosecutorial misconduct." *See Arias*, 248 Ariz. at 565, ¶ 76. Again, because of the overwhelming evidence of Lewis' impairment and dangerous driving, Lewis has not met his burden of showing that "without the error, a reasonable jury could have plausibly and intelligently returned a different verdict." *See id.* (quoting *Escalante*, 245 Ariz. at 144, ¶ 31). Lewis has failed to show that the actual misconduct in this case "so permeated and infected his trial as to render it unfair," and "thus failed to show that cumulative error denied him due process." *Hulsey*, 243 Ariz. at 394, ¶ 123.

**CONCLUSION**

**¶31**     For the foregoing reasons, we affirm Lewis' convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:     AA